5ʳ 113
47 1658

MARGARET JANE WINSTON *v.* R. W. FOSTER, Captain, and others, owners of the Ship St. Mary.

The act of 25 March, 1840, chap. 80, amending the acts previously in force relative to the transportation of slaves out of the State, against the will of their owners, is one of great severity, and must be strictly construed.

The presumption created by the first section of that act does not exist, where a runaway slave, concealed on board of a vessel, is discovered by the captain, and not by the owner of the slave, and the former pursues the course pointed out by law for restoring the slave to his owner, and the latter actually recovers possession of him.

Where a slave, concealed on board a vessel, is carried away and lost to the owner, the master and owners of the vessel will be responsible for his value, though he was received on board by a person employed on the vessel, contrary to the orders, and without the knowledge of the master and owners thereof. The latter are answerable for the damage occasioned by the acts of those they employ, and cannot excuse themselves on the plea, that they were done contrary to their orders, and without their knowledge. C. C. 2299.

APPEAL from the District Court of the First District, *Buchanan,* J.

MORPHY, J. The defendants, owners of the ship St. Mary, prosecute this appeal from a judgment decreeing them to pay a fine of $500, under the provisions of the act, approved March, 25th, 1840, "to amend the several acts passed for the purpose of preventing slaves from being transported or conducted out of the State, against the will of their owners."

The material facts of the case, as shown by the evidence, are, that on the evening of the 24th of May, 1840, the ship St. Mary, Captain Foster, was towed down the river by the tow-boat Tiger, under the command of J. Beebe; that on the next morning, being about twenty miles from the mouth of the Mississippi, Captain Foster discovered a negro on board of his ship; that on being asked who he was, the negro stated himself to be the second cook; the Captain replied, that he was not, and that he had never seen him before; that thereupon the cook of the vessel being called upon by the Captain to say who the man was, asserted that he was the second cook; to this the Captain again replied, that he had never seen the man before, and then called upon the negro to pro-

duce his free papers ; that finding that he had none, Captain Foster had the boy secured, and sent him on board of the Tiger, to be taken back to New Orleans. This was done, and the commander of the tow-boat, on his return to the city, lodged the negro in the jail of the Third Municipality. Captain Foster at the same time addressed to the Mayor a note in the following terms, to wit :

" *S. W. Pass, May* 24, 1840.

" SIR :—I discovered on board of my ship a negro man who calls himself Thomas Taylor, says he is free, and was born in Richmond, Virginia. The said negro having no documents or proof by which his freedom can be authenticated, I have thought proper to place him in charge of Captain Beebe, of the steamboat Tiger, who will deliver him over to the competent author ities.          Respectfully,

" R. W. FOSTER, *comm'g ship St. Mary.*
" *To Wm. Freret, Mayor of New Orleans.*"

The evidence further shows, that the boy, Thomas Taylor, was a confirmed, and incorrigible runaway, and was advertised in the Picayune, as having left the plaintiff, his master, on the 23d of May, 1840.

Under these facts, it does not appear to us, that the defendants have incurred the fine imposed by the statute of 1840. This law, being one of great severity, must be construed strictly, and should not be extended to cases not coming clearly, and literally. within its purview. The fine of $500 is incurred, only when the master and owners of a vessel labor under the presumption created by the first section of the act, and cannot destroy it in the manner therein required. The presumption, which the law implies, from the fact of the master finding his slave on board of a vessel without his written consent, is, that the master and owners of the vessel have received the slave, or have hidden him, or have suffered him to remain on board, with the intention of depriving his master of him, and of transporting him out of the State, or from one part of the State to another. In the present case, no such presumption exists against the defendants, because the Captain himself, and not the owner, found this slave on board of the vessel. The pre-

sumption even if it did exist, would be completely repelled by the conduct of the Captain, who, on discovering this runaway negro on board of his vessel, pursued the very course pointed out to him by law. B. & C.'s Dig. p. 254, No. 65. But it is insisted, that the evidence shows, that the slave was on board the St. Mary, with the knowledge and connivance of the cook, and we are referred to the case of *Buel* v. *The Steamer New York*, reported in 17 La. 541, in which we held, that "the defendant was liable for the value of the slave sued for, even if he was brought aboard by the engineer of the boat, acting under the Captain, contrary to his, the Captain's, instructions, and without his knowledge." This decision would be applicable to the present case, if the slave Thomas Taylor, had been carried away and lost to the plaintiff, and this suit were brought to recover his value. We would then hold, as we did in the case relied on, that the defendants are answerable for the damage occasioned by the acts of those they have employed, and cannot excuse themselves on the plea, that those acts were done contrary to their instructions, and without their knowledge. Civil Code, art. 2299. But the plaintiff's slave has been returned to her; and the only question is, whether the defendants have incurred the fine which the Legislature have imposed from motives of public policy. We think they have not, as there exists against them no evidence or presumption of law, that they did any of the acts intended to be punished by the fine.

It is, therefore, ordered, that the judgment of the District Court be avoided, and reversed, and that ours be for the defendants, with costs in both courts.

*Elwyn*, for the plaintiff.

*Rawle*, for the appellants.