JETHRO D. PEASE *vs.* OBADIAH GARDNER, et als.

Knox.    Opinion April 3, 1915.

*Automobile.    Collision.    Due Care.    Master and Servant.    Negligence.    Posses-
sion and Control.    Proximate Cause.*

In an action of tort to recover damages for injuries received by the plaintiff by a
collision between a wagon in which he was riding and an automobile driven by
the defendant Herrick as chauffeur and in which the defendant Gardner was a
passenger, it is

*Held:*

1.    That due care on the part of the plaintiff and want of due care on the part
of the chauffeur are clearly proved so that liability on the part of some one is
established.

2.    That Mr. Gardner was not legally responsible, because he was not in the legal
possession, control and management of the car, nor was the chauffeur acting
as his servant.    Mr. Gardner was simply a passenger or invited guest, and
although the car was put in his charge for the trip, so far as directions to the
chauffeur were concerned as to the route to be taken, that did not create the
relation of master and servant between them.

3.    That the chauffeur was the servant of Messrs. Hurley and Hobbs who had
engaged the car from its owner for this trip, the former supplying the gasolene,
and the latter engaging and paying the chauffeur, and who had put the car in
the quasi charge of Mr. Gardner as a passenger, and that Messrs. Hurley and
Hobbs are the parties liable.

4.    That the fact that Mr. Hurley was a member of a political State Committee
and Mr. Hobbs of a political town Committee, does not relieve them from
personal liability.    They were not agents, acting under orders from a superior,
but were themselves principals in a larger body.

On report.    Judgment for plaintiff against William P. Hurley and
Josiah H. Hobbs, in the sum of $500.    Judgment for defendants
Obadiah Gardner and Arthur L. Herrick.

This is an action on the case to recover damages against the defend-
ants for personal injuries by reason of the negligent operation of an
automobile by the defendant Arthur L. Herrick, acting as chauffeur.

Each defendant separately pleaded the general issue. At the conclusion of the evidence, the case was reported to the Law Court, with the consent of the parties, and upon the evidence mentioned in the agreed statement of the parties; the Law Court to decide all questions of law and fact involved in the case.

The case is stated in the opinion.

*Charles T. Smalley,* for plaintiff.

*Montgomery & Emery,* for defendants.

SITTING: SPEAR, CORNISH, KING, BIRD, HANSON, JJ.

CORNISH, J. On September 7, 1912, the plaintiff was injured by a collision between a wagon in which he was riding and an automobile, driven by the defendant Herrick as chauffeur and in which the defendant Gardner was a passenger.

The plaintiff's team was being driven by his father, and was standing near the platform of a store in the town of Hope and about ten feet behind the automobile. Mr. Gardner and others came from a hall over the store in which a public meeting had been held, entered the machine and, in starting, the chauffeur suddenly backed the automobile against the plaintiff's horse, frightened him and caused him to cramp the wheels of the wagon in such a way that the plaintiff either jumped out or was thrown out, and his right leg was caught in the spokes of the wheel and injured. The top of the car was up, obscuring somewhat the view to the rear. The chauffeur evidently did not know of the presence of the team, but he took no sufficient means to ascertain the fact and his conduct was clearly such as to render him negligent under the circumstances. To suddenly back an automobile in a public street of a village without first ascertaining or making reasonable efforts to ascertain whether another vehicle was standing within a short distance behind, and without giving any preliminary warning or signal, save perhaps the cut-out, which sounded almost at the same instant that the team was struck, cannot be deemed the act of a reasonably prudent man. The mere statement of the case proves negligence on the part of the chauffeur.

Nor is there any evidence of want of due care on the part of the plaintiff. The record is barren of any facts warranting such a conclusion. He did nothing which the ordinarily prudent man should not have done, nor did he fail to do anything which the ordinarily

prudent man, under like circumstances, should have done. The negligence of the chauffeur and that alone was the proximate cause of the injury. Liability on the part of someone, therefore, is established.

But the crucial question is, are these defendants, or any of them, legally responsible?

The machine was owned by Mr. Montgomery and he was riding in it at the time of the accident. Suit was first brought against him, but it was held that the action could not be maintained, because "although the owner of the automobile, he was not in the possession, control and management of it; nor was the chauffeur acting as his servant at the time of the accident." *Pease* v. *Montgomery,* 111 Maine, 582. Subsequently the pending suit was brought against these defendants, Messrs. Gardner, Hurley, Hobbs and Herrick.

The precise problem to be solved therefore is, in whose possession, control, and management, was the automobile in the eye of the law and whose servant at the time of the accident was the chauffeur Herrick. The facts upon which this solution depends are uncontroverted. The machine itself was owned, as we have said, by Mr. Montgomery, who lived in Camden. Herrick was his regularly employed chauffeur. The defendant, Captain Hurley, who was a member of a political State Committee for Knox County asked Mr. Montgomery, a day or two before the accident, as Mr. Montgomery says, "for the use of my car for some speakers on Saturday to take a trip through the County, and I asked him who were going and he told me, and I told him he could have the use of the car. . . . . Captain Hurley when he engaged the machine said he would furnish and pay the chauffeur and the gasolene." Captain Hurley corroborates this testimony and says that as he was unable to procure a public car he engaged Mr. Montgomery's for this special trip and was to pay for the gasolene and the services of the chauffeur, Mr. Montgomery making no charge for the car itself. The defendant Hobbs was at the same time Chairman of a political committee of the town of Camden, and was also interested in the conduct of the campaign. He testifies: "I remember talking with you, (Mr. Montgomery), that you told me that Judge Hurley had asked you if he could have your car, that he couldn't get any public car down here, and you told him he could and told me I could have it and go with him. I didn't come down to

Rockland. . . . . I told Mr. Herrick about noon that we wanted him to go down there so as to bring Mr. Gardner up there at two o'clock. . . . I thought if he would do it I would give him five dollars to complete the trip that day and bring Mr. Gardner back here Saturday night." "Q. And did you have him take the car and go down? A. He did. Q. And did you afterwards settle with him? A. I did."

The engagement and operation of the car on this special trip therefore seem to have been a joint enterprise on the part of Captain Hurley and Mr. Hobbs, who were interested in a common undertaking. Captain Hurley engaged the car and apparently furnished the gasolene, while Mr. Hobbs engaged and paid the chauffeur. The car was sent to Rockland where it took on Senator Gardner and Mr. Butler who were the speakers on the tour, which was to include Camden, Hope and other towns. Mr. Gardner's wife and daughter also accompanied them, and Mr. Montgomery boarded the car at Camden and went to Hope. Captain Hurley who was present when the car reached Rockland put it, as he says, in "Mr. Gardner's charge when he left the hotel. The car was for his use, and to be returned when he got through with it, at the end of his tour, the way I understood it."

Under these facts it is clear that no liability rested upon Mr. Gardner. He had nothing to do with engaging the car. He was simply one of the passengers for whom the car was engaged, and although it was put in his charge during the trip, so far as directions to the chauffeur were concerned as to the route to be taken that did not create the relation of master and servant between them. It was as if the owner of a car should invite a friend to ride, without the owner accompanying him and instruct the chauffeur to go wherever the friend might direct. The chauffeur would still remain the servant of the owner and the friend would still be merely the passenger for whose pleasure or convenience the ride is taken. That was the situation here so far as Mr. Gardner was concerned. He was not the master in any sense and Herrick was not his servant.

It is equally obvious that on this trip, Herrick whose want of care caused the accident was the servant of Messrs. Hurley and Hobbs. True, he was the regular employe of Mr. Montgomery but by mutual agreement between all the parties, including Herrick himself, he had become for the time the servant and employe of Hurley and Hobbs.

Mr. Montgomery had loaned them his car without charge, and they had made, with Mr. Montgomery's consent, an independent contract with Herrick and had hired him as chauffeur and subsequently paid him.   They had the right to employ whom they pleased and the fact that they employed, with Mr. Montgomery's consent, the man who was accustomed to run this car made him no less their servant in that particular transaction.   It was a new employment mutually agreed upon and attended with all the legal consequences usually pertaining to such a relation.   This principle is well recognized.   A servant admittedly in the general employment of one person may be loaned or hired to another in such a way as to become the servant of that other for the time being in a particular transaction with all the legal consequences of the new relation.   *Wyman* v. *Berry,* 106 Maine, 43, 20 A. C., 439 and note; *Wilbur* v. *Construction Co.,* 109 Maine, 521-525.   The same principle applies when as here the servant is hired by the new master with the consent of the general or original master.   The test to be applied in the application of the rule has been clearly stated as follows:   ''The test is whether in the particular service which he is engaged or requested to perform he continues liable to the direction and control of his original master or becomes subject to that of the person to whom he is lent or hired or who requests his services.   It is not so much the actual exercise of control which is regarded, as the right to exercise control.''   26 Cyc., 1522. *Janik* v. *Ford Motor Co.,* 147 N. W., 510 (Mich., 1914) 52 L. R. A., N. S., 294.   This test is fully met in the case at bar.   So far as this trip was concerned the original master Montgomery was as a stranger and the new masters, Hurley and Hobbs, not only had the right to exercise control over the chauffeur, but actually did exercise it.   The original master surrendered the right to control and the new masters assumed it.   Herrick, for the time being, was their chauffeur whom they could retain or discharge at will and who was in charge of a car over which they had the temporary right of possession.   He was conveying their invited guests and the fact that the guests were allowed by the new masters to choose the route which they should travel did not take away the legal right of control existing in such masters. Herrick still remained their servant and for his negligent acts while thus employed they were legally liable.

The learned counsel for the defendants seek to avoid this liability on the ground that Captain Hurley was a member of a State Com-

mittee, and Mr. Hobbs of the Camden Town Committee and claim that an agent is not ordinarily held liable for the misfeasance of a sub-agent. The fallacy in this proposition lies in the fact that these two men were not agents, but were members of a larger body and principals in themselves. They were carrying out no orders from a superior authority but were acting on their own initiative in forwarding the campaign. Captain Hurley had charge of Knox County and Mr. Hobbs was chairman of the Committee of the town of Camden. They each had associates and equals in their work but no superiors, and so far as the transportation of speakers was concerned there is nothing to show that each did not have absolute authority to conclude all necessary arrangements. By their own acts and those of their servant Herrick in this particular they must both be bound.

There remains the question of damages, as this case is before the Law Court on report, the evidence at the first trial being made a part of the record in this case by agreement. The injury was to the knee of the right leg. The jury rendered a verdict for $475 at the first trial held in April, 1913. At the trial in the case at bar held at the September term, 1914, further medical evidence was introduced by the plaintiff tending to show from an examination made during that month that the injury was permanent, and although a physician representing the defendants was present at that examination he did not take the stand to contradict this evidence. In fact, the defendants introduced no medical testimony whatever at either trial. In view of the nature and extent of the injury, and the subsequent history of the case, we think the sum of five hundred dollars would be fair compensation.

The entries must therefore be,

> *Judgment for plaintiff against William P. Hurley and Josiah H. Hobbs in the sum of $500.*

> *Judgment for defendants Obadiah Gardner and Arthur L. Herrick.*