### DUNN v. CAMPO et al. (AMERICAN MUT. LIABILITY INS. CO., Intervener).

#### No. 16613.

Court of Appeal of Louisiana. Orleans.
Feb. 21, 1938.

Mark W. Malloy, of New Orleans, for appellant.

Spencer, Gidiere, Phelps & Dunbar and Louis B. Claverie, all of New Orleans, for appellees Dunn and American Mut. Liability Ins. Co.

WESTERFIELD, Judge.

This is a suit by Olva C. Dunn against Joseph Achary, Cosimo Campo, and the Employers Liability Assurance Corporation, Limited, of London, England, for damages for physicial injuries received in an automobile accident on June 6, 1934. The American Liability Insurance Company intervened in the proceeding and prayed for judgment in its favor against the same defendants for the sum of $1,073.16, the amount alleged to have been paid to Dunn, the plaintiff, as workman's compensation.

In the District Court there was judgment in favor of the plaintiff in the sum of $500 and in favor of the American Mutual Liability Insurance Company for the amount prayed for against Joseph Achary and Cosimo Campo in solido. The suit as against the Employers Liability Assurance Corporation, Limited, of London, England, was dismissed. Cosimo Campo, one of the two defendants condemned below, has appealed to this Court.

There is practically no dispute as to the facts. Cosimo Campo, a retail grocer in the city of New Orleans, whose place of business is located on the corner of St. Claude avenue and Clouet street, employed John Achary, a minor, twenty years of age, as a delivery boy. Campo was a customer of H. Grabenheimer & Sons, Inc. Cyril Farina, a salesman in the employ of H. Grabenheimer & Sons, Inc., called on Campo on the date of the accident on business of his employer. While in Campo's place of business, Achary, who had a few deliveries to make for Campo, borrowed from Farina his employer's automobile in which Farina had driven to Campo's store. Achary used the Grabenheimer automobile to deliver packages for Campo and while on this errand ran into a parked truck belonging to the Louisiana Baking Company and operated by the plaintiff, Olva C. Dunn. The truck, at the time of the accident, was parked on the corner of Desire and N. Johnson streets, facing the Mississippi river on Desire street, and the plaintiff, Dunn, was standing at the rear of the truck removing some cakes for the purpose of making delivery to a customer of his employer. Dunn was quite seriously injured, suffering a fracture of the spine and of the tibia of his left leg and contusions and brush burns of both legs. He sued for $14,042.49 as damages.

Campo did not use an automobile in connection with his business which was largely of the "cash and carry" nature, such deliveries as were made were effected by Achary, as a rule, on foot, and occasionally, when the packages were large or numerous, by means of a wheelbarrow furnished by Campo for that purpose.

The Employers Liability Assurance Corporation, Limited, of London, England, was the underwriter of the public liability

of H. Grabenheimer & Sons, Inc., and was made defendant in this suit upon the ground that Grabenheimer's employee, Farina, acting in the scope of his employment and in the furtherance of his employer's business, had loaned its automobile to John Achary with the consent and permission of his employer.

Joseph Achary, the father of John Achary, was made defendant upon the ground that he was responsible for the tortious acts of his minor son. Joseph Achary failed to answer and made no appearance in the suit and judgment was rendered against him by default and no appeal has been taken.

■ In regard to the Employers Liability Assurance Corporation, Limited, of London, England, there is no evidence in the record to substantiate the contention that its insured knew of or consented to the lending of its automobile to Achary. In fact, the evidence is to the contrary. The judgment dismissing this defendant is correct.

It is admitted that John Achary's negligence was the sole cause of the accident which resulted in the injury to plaintiff which forms the basis of this suit.

The sole issue, therefore, is whether Achary's employer, Campo, is responsible. Article 2320 of the Revised Civil Code reads in part as follows:

"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."

We are aware of no case in this jurisdiction and we have been referred to none which is directly in point, though the doctrine of respondeat superior has been many times discussed in the numerous cases in which it has been invoked.

In a very early case, that of Winston v. Foster, 5 Rob. 113, it was said:

"The defendants are answerable for the damage occasioned by the acts of those they have employed, and cannot excuse themselves on the plea, that those acts were done contrary to their instructions, and without their knowledge. Civil Code art. 2299."

The following quotation from Corpus Juris, vol. 39, p. 1286, is called to our attention:

"If the master undertakes to determine for himself the manner in which his servants shall perform his prescribed duties, the obligation is on him to see that such instructions are carried out and that the servant does not substitute his own methods for those of his master. Any other rule, it has been said, would in a measure nullify the doctrine of respondeat superior."

See, also, Lerner Shops of Alabama v. Riddle, 231 Ala. 270, 164 So. 385, and Florida Dairies Company v. Rogers, 119 Fla. 451, 161 So. 85.

■ The foregoing and other authorities sustain the proposition that an employee who violates an order or a rule of his employer with respect to the manner of discharging some function of his employment in furtherance of the master's business would not, on that account, be regarded as out of character as an employee so as to relieve his master of responsibility for his tortious conduct. For example, if Campo had instructed Achary to make no deliveries between the hours of 10 and 12 in the morning and he, in violation of such instructions, had undertaken to make deliveries during those hours and had run down Dunn with an automobile provided by Campo for use in making the deliveries, Campo would, nevertheless, be liable for his servant's negligence in injuring Dunn, though the errand was undertaken in defiance of a standing order of Campo. Similarly, if Achary had used the wheelbarrow provided by Campo and intended only for use in the delivery of numerous or heavy parcels, for a few small packages, and while on such an errand had run into and injured a child playing on the sidewalk, it might well be said that though the wheelbarrow was provided by his employer for a different purpose than that for which it was used at the time of the accident and to that extent Achary's conduct was unauthorized by his master, that, nevertheless, Campo would be responsible.

Beyond this, the doctrine invoked has not been extended so far as we know, unless the case of Frenyea v. Maine Steel Products Company, 132 Me. 271, 170 A. 515, 516, can be said to have sanctioned further expansion. The facts in that case are as follows: The Maine Steel Products Company sold some snow plows to the highway department of the state of Vermont, together with deflectors with which they were to be equipped. The factory sent a mechanic from its factory in Maine to Montpelier, Vt., where the deflectors

had been shipped by rail and where they were located in the state garage. The snow plows, which had been previously delivered, were scattered throughout the state of Vermont. In order to facilitate the mechanic of the steel company, the Vermont highway department, on its own initiative, loaned him a Ford truck in which to put the deflectors and carry them to the snow plows, the locations of which were to be pointed out by the superintendent of construction of the Vermont highway department who accompanied him. While on such an errand an accident occurred and, in a suit which was brought by the injured party in the state of Maine, the Supreme Court of that state held that there was liability on the part of the master for the negligence of its mechanic, although the means used for transporting the deflectors was not provided by, intended, or contemplated by the master. A close reading of this case will show that the main question considered involved the responsibility of the master for the negligent acts of its servant who, at the time, had been loaned to a third party, and in determining that the road mechanic in this particular case had involved his employer in responsibility for his negligence, the court announced the familiar doctrine concerning a division of control of the servant in the following language:

"In determining where the liability rests in this class of cases, the test which has long and repeatedly been applied is whether, in the particular service which the servant is performing at the time of his tort, he was liable to the general direction and control of his original employer or had become subject to that of the person for whom the work was being done. 'It is not so much the actual exercise of control which is regarded, as the right to exercise control.' Pease v. Gardner, supra [113 Me. 264, 93 A. 550]; 30 C.J. 1275, and cases cited."

It is true that the court did say in one paragraph:

"Nor can the plaintiff be denied a recovery because the defendant's servant used a means for transporting its deflectors which it had not intended or contemplated. When the collision occurred, the road mechanic was using the truck not for his own purposes or those of the state of Vermont, but to perform a part of the service which he had been directed to render. This could properly be found to be within the scope of his employment. If so, his master is liable. Champion v. Shaw, 258 Mass. 9, 154 N.E. 181; 39 C.J. § 1478, and notes."

But, whatever may have been held in the Frenyea Case, the weight of authority largely preponderates in favor of exempting the master from liability for the acts of his servant in situations similar to that under discussion here.

In the case of St. Louis-San Francisco Railway Company v. Robbins, 219 Ala. 627, 123 So. 12, the Supreme Court of Alabama held that an employer was not responsible for the negligent operation of an automobile by its messenger, who had hired it for the purpose of discharging an errand of his employer, the employer having provided him with a bicycle for the purpose of delivering its messages.

In Kennedy v. Union Charcoal & Chemical Company, 156 Tenn. 666, 4 S. W.2d 354, 358, 57 A.L.R. 733, the Supreme Court of Tennessee held that the master was not liable for the wrongful act of a servant in the use of an instrumentality which did not belong to the master and was not authorized by him. The court, in its opinion, said:

"To hold the master liable in the circumstances of this case would be to extend the rule of respondeat superior further than any adjudication, to which our attention has been directed, has yet gone, as well as beyond the rule of reason. Such a holding would be most disastrous in its results, and, as said by Mr. Justice Park, if this were the rule 'every master might be ruined by acts done by his servants without his knowledge or authority.'"

See, also, Hughes v. Western Union Telegraph Corporation, 211 Iowa 1391, 236 N.W. 8; Taub v. New York Board of Fire Underwriters, 238 App.Div. 587, 265 N.Y. S. 644; Wilson v. Pennsylvania Railway Company, 63 N.J.L. 385, 43 A. 894; Goldsmith v. Chesebrough, 138 Md. 1, 113 A. 285; St. Louis, I. M. & S. Ry. Company v. Robinson, 117 Ark. 37, 173 S.W. 822; Cooley on Torts, vol. 3, § 396; 18 Ruling Case Law, § 252. The English and Canadian authorities are to the same effect. Goodman v. Kennell, 3 Car. & P. 167; Stretton v. City of Toronto, 13 Ont. 139.

There is no evidence in the record which would justify the conclusion that Campo knew or tacitly approved of the previous use by John Achary of the Grab-

enheimer automobile as contended for by plaintiff's counsel. In our opinion, Achary merely sought an easy way of discharging the errand of his employer, and even though it be conceded that he had done so on previous occasions, we are convinced that it was without the knowledge or consent of his employer. To hold that a small retail grocer, such as Campo appears to be, would be liable for the unauthorized use of such a potentially dangerous instrumentality as an automobile would be to extend the responsibility of the master unreasonably.

For the reasons assigned, the judgment appealed from in so far as it condemns Cosimo Campo is annulled, avoided, and reversed and it is now ordered that there be judgment herein in favor of the defendant Cosimo Campo dismissing the suits of plaintiff, Olva C. Dunn, and the intervener, American Mutual Liability Insurance Company, at their cost. In all other respects, the judgment appealed from is affirmed.

Reversed in part. Affirmed in part.