342 So.2d 1231 (1977)
Felton LOWE and Gilda Lowe
v.
GENTILLY DODGE, INC. and ABC Insurance Company.
No. 7637.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1977.
*1232 Murphy & Simon, E. Kelleher Simon, New Orleans, for defendants-appellees.
Kronlage, Dittmann & Caswell, Joseph Maselli, Jr., New Orleans, for plaintiffs-appellants.
Before SAMUEL, REDMANN, BOUTALL, SCHOTT and MORIAL, JJ.
SCHOTT, Judge.
Plaintiffs filed this suit against Gentilly Dodge, Inc. (Gentilly) and its public liability insurer, Allstate Insurance Company,[1] for damages sustained by them when their automobile was thrown against the railing of an elevated portion of Interstate Highway 10, in New Orleans while the car was being towed by a truck driven by Tommy Austin, an employee of Gentilly. From a judgment in favor of the defendants dismissing plaintiffs' suit, plaintiffs have appealed.
On June 29, 1973, Felton Lowe purchased a used automobile from Gentilly. The next day, he and his sister, the other plaintiff herein, were driving to the vendor's establishment in the vehicle to obtain the bill of sale and related documents. The automobile stalled on Interstate Highway 10, and Felton telephoned Gentilly for assistance. Some time later one of Gentilly's employees, Tommy Austin, came to their assistance and attempted to tow the automobile back to defendant's establishment with the plaintiffs riding in the towed vehicle. Austin lost control of the truck he was operating, and it struck the railing of the highway causing injury to both plaintiffs and damage to plaintiff's automobile.
*1233 The only question to be resolved is if defendant's employee, Austin, was acting in the course and scope of his employment when he towed the automobile from the highway and caused the accident in suit.
When Lowe purchased the automobile the sale was handled by Steve B. Powell, Gentilly's salesman. Powell's superior was Ross Liles, the used car manager. At that time Tommy Austin was also employed by Gentilly Dodge as a used car porter. Austin's duties were to place keys in the used vehicles when business opened, start them each morning, and clean them prior to delivery upon sale.
When Lowe telephoned for assistance on the day after the sale, he spoke to Powell. Powell received the call in the office of the used car manager in the presence of Austin. Powell told Lowe he would send a wrecker to assist him if Liles authorized him to do so. According to Powell, Austin offered to help Lowe but was told by Powell not to do so because a wrecker would be dispatched. Powell then left to locate Liles, and as he returned to the office he saw Austin leaving the used car lot in a pickup truck placed on the lot for sale.
After Austin arrived at the scene of plaintiffs' breakdown, he called Liles from a nearby service station.
In Liles' own words he said to Austin:
"And I asked Tommy what seemed to be the matter and he said he didn't really know. I asked him if he would go back over and check the car and see if it had gas in it and try to start it. If it had gas in it, if he couldn't get it started, come back and call me and we would send a wrecker out and pick it up."
Contrary to Liles' instructions, Lowe rented a tow chain from the service station and, after the chain had been connected to the truck and the automobile, Austin Commenced towing the car down from the elevated interstate highway.
LSA-C.C. Art. 2320 provides that:
"Masters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed."

While the evidence shows that Austin had no authority to take the truck initially what Liles said to Austin when he telephoned constituted a ratification of Austin's use of the truck. Far from telling Austin to return with the truck immediately, Liles told Austin to "check the car" and to "try to start it."
Considering the circumstances that Lowe's car had broken down on an interstate highway only the day after it was sold by Gentilly at a time when he was returning to Gentilly, in effect to complete the sale, it becomes clear that Liles was anxious for Austin to keep the customer happy. Not only was his conversation devoid of an intention to terminate Austin's authority but it also went beyond authorizing Austin simply to check to see if gas was in the car.
The following from Dunn v. Campo, 179 So. 102 (La.App.Orl.1938) is pertinent:
"The foregoing and other authorities sustain the proposition that an employee who violates an order or rule of his employer with respect to the manner of discharging some function of his employment in furtherance of the master's business would not, on that account, be regarded as out of character as employee so as to relieve his master of responsibility for his tortuous conduct."
Austin was discharging some function of his employment in furtherance of Gentilly Dodge's business, to wit, to pacify a customer and to promote Gentilly's good will with that customer. He had not been told to return immediately but had been encouraged to start Lowe's automobile. Since he was out on the interstate highway with a truck his decision to move the customer's vehicle was not incompatible with his status as Gentilly's employee.
Also, the following from St. Paul Fire & Marine Insurance Co. v. Roberts, 331 So.2d 529 (La.App. 3rd Cir. 1976) is pertinent:
"We hold that an employee on a special errand, pursuant to specific request or *1234 direction of his master, is within the scope and during the course of his employment from the time of embarking on the errand until his return or deviation from the mission for personal purposes. In this instance we find no deviation because Robert's intent was to return to his home, although the return route may have been slightly longer than that by which the delivery was made. We conclude that Roberts was acting within the scope and during the course of his employment at the time of the accident."
Austin's conduct constituted a minor or slight deviation from his instructions at worst. This is true when considered from Liles' point of view alone. But when considered from plaintiff's point of view it is even more so. Here was Lowe stranded on I10 and being assisted by Gentilly's employee with Gentilly's specific authorization. Even if Lowe had been privy to the conversation between Liles and Austin, which he was not, he could assume that the authorization to Austin to do what he could to get the automobile started included the removal of the automobile from its position of being stranded on 1-10.
Our decision has been reached based upon Liles' testimony as to the extent of Austin's authority under the circumstances. Austin himself could not be located and, therefore, did not testify. Plaintiff's testimony shed no light on the question and for that reason the trial judge's statement in his reasons for judgment that he was "not impressed with the testimony of plaintiffs" does not dispose of the problem as we see it.
Likewise, the evidence offered by Gentilly that Austin and Lowe were acquainted before the incident and that Austin had sought a part of the commission on the sale of the car because he had produced the customer is unrelated to the principal issue in the case, to wit, the applicability of C.C. Art. 2320.
Having concluded that defendants are liable to plaintiffs for their damages, it becomes necessary to assess quantum. Both plaintiffs saw Dr. Carl H. Rabin on July 6, 1973, and copies of his reports were placed in the record by stipulation.
In his initial examination of Felton Lowe, Dr. Rabin found spasm and tenderness of the cervical and dorsal spines. He diagnosed moderately severe cervical and dorsal strain. He prescribed medication, ultrasonic physiotherapy and a soft cervical collar. The collar was worn for one month and the therapy was administered until September 17, at which time Lowe still complained of pain and was instructed to continue with oral medication and a heating pad. Dr. Rabin expected Lowe's symptoms to be resolved in the next two or three weeks.
In his initial examination of Gilda Lowe, Dr. Rabin found spasm and tenderness of the lumbar spine and diagnosed a moderately severe lumbosacral strain. He prescribed medication and physiotherapy. The latter was administered until September 7, at which time she still complained of pain and was told to continue with oral medication and a heating pad. X-rays had revealed a spondylolysis defect of L5 and Dr. Rabin felt that this would prolong her convalescence. Nevertheless, he expected her symptoms to be resolved in two to four weeks.
Felton Lowe is entitled to recover $494 for Dr. Rabin's bill, $55 for X-rays, $877.63 for lost wages and $110.42 for automobile expenses. Gilda Lowe is entitled to recover $410 for Dr. Rabin's bill and $40 for X-rays. Each plaintiff will be awarded the sum of $500.00 for general damages.[2]
Accordingly, the judgment appealed from is reversed and there is judgment in favor of plaintiff Felton Lowe and against defendants, Gentilly Dodge, Inc. and Allstate Insurance Company, jointly and in solido in the sum of $2037.05 with legal interest from *1235 date of judicial demand until paid, and for all costs of these proceedings, and
There is judgment in favor of plaintiff, Gilda Lowe and against defendants, Gentilly Dodge, Inc. and Allstate Insurance Company, jointly and in solido in the sum of $950.00 with legal interest from date of judicial demand until paid, and for all costs of these proceedings.
REVERSED AND RENDERED.
REDMANN, J., concurs with written reasons.
SAMUEL and BOUTALL, JJ., dissent with reasons given by SAMUEL, J.
REDMANN, Judge, concurring.
The trial judge's reasons for judgment were that he "was not impressed with the testimony of the plaintiffs." He disbelieved them.
I agree with the plurality's analysis of the law which makes defendants liable even if plaintiffs are totally disbelieved. I believe the plurality errs in not according to the trial judge's disbelief of plaintiffs the significance it has in fixing quantum. The significance is that plaintiffs' subjective complaints of pain must be rejected except insofar as supported by other credible evidence. The only objective evidence of any injury was spasm on the first visit to a doctor; none is reported found thereafter. The damage to the car was slight ($110). I conclude that the injuries were minimal.
SAMUEL, Judge, dissenting.
Plaintiffs' right to recover in this matter is controlled by Civil Code Article 2320.
The majority opinion quotes that article only in part. The complete article reads:

"Masters and employers are answerable for the damage occasioned by Their servants and overseers, in the exercise of the functions in which they are employed.

Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisana, might have prevented the act which caused the damage, and have not done it." LSA-C.C. Art. 2320 (emphasis ours).
As provided by that article, the questions presented are (1) at the time the accident occurred, whether Austin was exercising a function in which he was employed,[1] and (2) if so, whether Gentilly Dodge, his employer, could have prevented the act which caused the damage and failed to do so. I find both questions must be answered in the negative.
The evidence is uncontradicted as to the following facts: Gentilly Dodge's policy was not to tow vehicles itself but engage a wrecker or commercial tow truck when needed for that purpose; Austin, who had to be aware of this policy, had been refused permission to go to Lowe's assistance; despite that refusal and in direct disobedience thereof, he took the pickup truck out of defendant's premises and did go to help Lowe; the pickup truck used by Austin was not a Gentilly Dodge truck, was not equipped for towing,[2] did not display Gentilly Dodge's emblem or logo, and was in *1236 fact simply a used truck on its lot for resale. In addition, the record is devoid of any evidence showing, or even tending to show, that Austin's superiors authorized him to tow the automobile; the only evidence is to the contrary. The instructions given to Austin by Liles, the used car manager, correctly quoted in the majority opinion, definitely limited Austin's authority to determining whether the automobile had gas in it and to trying to get it started (Austin was on the scene at that time). Austin clearly was told if he could not get the automobile started, a wrecker would be sent to pick up that vehicle. This telephone conversation between Liles and Austin not only did not give the latter permission to tow the automobile, it limited his authority to trying to get the car started and, by telling Austin a wrecker would be sent to tow the car in the event of failure to start, effectively prohibited Austin from attempting to tow.
Referring to the first question presented, it appears quite clear to me that Austin was not exercising a function in which he was employed. He was employed solely as a used car porter and his duties were limited to placing keys in the used vehicles when business opened, starting them each morning, and cleaning them prior to delivery following sale. As has been pointed out, Austin was not authorized to tow the Lowe automobile; Liles' instructions effectively were directly contrary to such authorization.
Even assuming arguendo that Austin was exercising a function in which he was employed, I am of the firm opinion that Gentilly could not have prevented Austin from towing the automobile. In total disregard of a superior's (Powell's) orders not to do so, Austin had taken the truck out of Gentilly's used car area and gone to Lowe's assistance. After arriving at the scene, he called another superior (Liles) and, as has been pointed out, was quite effectively told not to tow the automobile. In view of these and all the other circumstances, I cannot see what Gentilly could have done to prevent the towing. The majority suggests Liles could have ordered Austin "to return immediately", but how this would have prevented Austin from towing the automobile escapes me. Austin had been ordered not to go to Lowe's assistance; he had been effectively ordered not to tow the vehicle; and the two combined certainly were more emphatic, and more likely to be obeyed, than an order "to return immediately."
The majority's quotation from Dunn v. Campo, 179 So. 102,104, is not authority for the majority holding; it is only dictum which the Dunn court did not follow. With the exception of one old Louisiana case (Winston v. Foster, 5 Rob. 113, handed down in 1843 and, interestingly, decided in favor of the defendants), the authorities referred to in the quotation are cases from other states and a general summation in Corpus Juris. In Dunn, a suit for personal injuries, the employee was hired by the defendant, a retail grocer, to make deliveries either on foot or with the use of a wheel barrow furnished by the employer. On the day of the accident, the employee borrowed an automobile from a third person and negligently injured the plaintiff while making deliveries in the automobile. Finding the employer did not know or tacitly approve of the employee's use of the automobile to make the deliveries, the Dunn court held in favor of the employer and dismissed the suit. Thus, insofar as it may be applicable in this case, Dunn supports the judgment appealed from. In this case, Gentilly not only did not know Austin was going to tow the automobile, Gentilly did, in my opinion, all it reasonably could to prevent that towing.
The other case relied on and quoted from by the majority is St. Paul Fire & Marine Insurance Co. v. Roberts, La.App., 331 So.2d 529. That opinion states there is no hard and fast rule for determining whether or not an employee is acting within the scope and during the course of his employment (each case must be decided in the light of its own peculiar facts and circumstances) and lists numerous factors which should be considered in making that determination.
*1237 The only such factor considered by the majority in this case is their conclusion that "Austin was discharging some function of his employment in furtherance of Gentilly Dodge's business, to wit, to pacify a customer and to promote Gentilly's good will with that customer." How could Austin be discharging a function of defendant's business by towing the Lowe vehicle in direct violation of the two orders not to go to Lowe's aid and not to attempt the towing?
There is another reason why I cannot agree Austin was discharging a function of the defendant's business. Evidence in the record indicates Austin and Lowe were acquaintances and perhaps friends and Austin sought a commission from Gentilly on the ground he had produced Lowe as a customer. In addition, Lowe testified he had told Austin ". . . if he would have it [the car purchased by Lowe] shined up nice for me I would tip him and to get some of the feet rests that goes under the floor I would tip him and he said that he could do that." Under these circumstances, especially in view of the fact that Austin volunteered to go to Lowe's assistance and did so despite being ordered not to, it appears to me that Austin was acting in his own behalf rather than discharging a function of his employment.
As I would affirm the judgment of the trial court, I respectfully dissent.
BOUTALL, Judge, dissenting.
BOUTALL, J. dissents for the reasons expressed in the dissent by SAMUEL, J.
NOTES
[1] Allstate was made a defendant by supplemental and amended petition.
[2] Judges Schott and Morial are of the opinion that Felton Lowe is entitled to $2,000 and Gilda Lowe $1,500, for general damages. However, LSA-Const. 1974, Art. 5, § 8(B), provides that a majority of the judges sitting in a case before the Court of Appeal must concur to render judgment.
[1] It should be noted that while our jurisprudence has equated "in the exercise of the functions in which they are employed" as used in Article 2320 with "course and scope of employment", a stricter interpretation and construction of "course and scope of employment" is used in cases arising under Article 2320 than is true of the liberal interpretation afforded to that phrase in workmen's compensation cases. As this court said in Bradley v. Humble Oil & Refining Company, 163 So.2d 180, 184:

"While LSA-Civil Code Art. 2320 imposes liability on employers for torts of their employees committed `in the exercise of the functions in which they are employed', it is absolutely necessary that such a wrong occur in the course and scope of the servant's employment. While a very liberal interpretation is afforded to the phrase `course and scope of employment' in the workmen's compensation cases, it is equally true that a more strict interpretation and construction thereof is applied in tort cases where a plaintiff is endeavoring to impose vicarious liability on an employer for personal injuries inflicted by an employee."
[2] A tow chain was rented from a nearby service station. Lowe paid the rental charges.