CHASEZ, Judge.
This suit was filed by Mary Louise O’Connor, individually, and as natural tu-trix of her minor daughter, Frankie Mary Stewart, for medical expenses and personal injuries incurred as a result of an accident involving the Stewart child and a taxicab.
The defendants named in the suit were Robert K. Wilson, the driver of the taxi; Grady Emerson, its owner; Cooperative Cab Company, Emerson’s principal; St. Louis Fire & Marine Insurance Company, the liability insurer of Cooperative Cab Company, and Pepsi-Cola Bottling Company (Gulf Bottlers, Inc.).
The trial judge after hearing all the evidence dismissed plaintiff’s suit, and the plaintiff now takes this appeal.
Certain facts are clear from the record. On October 4, 1966, a truck owned and operated by Pepsi-Cola Bottling Company (Gulf Bottlers, Inc.), was double-parked in the left hand lane of traffic in the middle of the 1500 block of Magazine Street in the City of New Orleans. On that section of Magazine Street traffic flows in a one-way direction toward uptown New Orleans. The street there is actually four lanes wide, but a lane is left for parking on each side, and only the remaining middle two lanes are for driving. The action of the Pepsi-Cola truck in double-parking left only one of these remaining two lanes open for driving at the time of the accident. As the taxi, driven by Wilson, approaching from the rear, reached the front of the truck, the Stewart child either ran or stepped from in front of the truck and the accident occurred. The record is not clear as to whether the child ran or stepped into the left front side of the taxi, or whether she had proceeded completely in front of the taxi and was then struck by it. The taxi driver stated the child actually ran into the side of his vehicle near the front. The investigating New Orleans Police Officer could not determine from the physical evidence at the scene exactly how the accident occurred.
The young Stewart girl, who was then 9 years of age, was accompanied by a slightly older girl, and was in fact holding the older girl’s hand about the time of the accident. However neither child was called to testify as witnesses at the trial, though both were present, and thus we are left with the testimony of the cab driver as the sole eyewitness to the accident.
The Police Officer stated that he measured some 16 feet of skidmarks left by the taxi, and this would support the cab driver’s testimony that he was travelling only 15 miles per hour at the time of impact. The speed limit in that area of Magazine Street was 30 miles per hour.
Counsel for appellant relies on several premises in this appeal. First he argues the action of the driver of the Pepsi-Cola truck in double parking his vehicle in violation of city ordinances, constituted negligence per se which was a cause of the accident. It is his position that the action of the truck driver set up the scene of the accident in that the young girl had to proceed out into the middle of a busy thoroughfare in order to see if there was oncoming traffic, and was struck by the taxi while doing so.
Next he contends that the action of the cab driver in failing to sound his horn and not proceeding with extreme caution in an apparently dangerous situation, also constituted actionable negligence.
Finally, he argues that a nine year old child who was shown to have the intelligence of a “high grade mental defective”, and the mental capacity of a child of approximately six years of age at the time of the accident, could not be guilty of contributory negligence. In support of this contention, counsel for plaintiff during the trial of this matter had presented a psychologist who had examined the Stewart child several months after the accident, *752 and who had verified that the child was mentally deficient to the degree now alleged by counsel.
In finding for the defendants the trial judge assigned these oral reasons from the bench:
“It seems to me this is a very simple case, Mr. Bendana. The burden is upon you. Without going into contributory negligence, which is all the purpose of this psychiatric testimony, I don’t think the question of contributory negligence comes in here. I don’t see any negligence on the part of either one of the defendants, even if the truck driver was parked where he shouldn’t have been and violated the law, that wasn’t the proximate cause of the accident. The proximate cause of the accident was the child running or walking, or something where she had no business being.
“And the evidence I heard would indicate that she was accompanied by a (sic) older child. Neither one has been put on the witness stand. I am going to dismiss the suit of plaintiff.”
In essence we agree with these conclusions. Certainly as far as the actions of the taxi driver are concerned we find no negligence whatsoever. The record discloses that he was travelling at a speed of only fifteen miles per hour on a busy street where the speed limit was 30 miles per hour. He was able to bring his vehicle to a complete stop within sixteen feet of the point where the accident occurred. His testimony was that the child herself ran into the front side of his cab.
The only two witnesses who could dispute this testimony were the young victim and her companion; however as the plaintiff without explanation chose not to call them to testify we can only assume under the jurisprudence that their testimony would be of no avail to plaintiff. Sun Insurance Office, Ltd. v. Batiste, 205 So.2d 71, La.App., 4 Cir. 1967; Martin v. Lehmann, 147 So.2d 243, La.App., 4 Cir. 1962.
Under these circumstances we find no evidence of negligence on the part of the driver of the taxi. This is particularly true in view of the fact that the young child was attempting to cross a busy street in the middle of a block, and proceeded from behind a parked vehicle.
The actions of the Pepsi-Cola truck driver present a closer question. The Traffic Ordinance of the City of New Orleans prohibits parking, standing or stopping in the manner in which the truck was so doing.[1] Violation of these Ordinances constitute negligence per se.
Pepsi-Cola contends that the truck was stopped temporarily, and that it was so stopped out of necessity, within the contemplation of the exception in the ordinance. Thus it was not in violation of the *753 ordinance. We find no merit in this argument. The exception provided by the ordinance allows such stopping only when necessary to avoid conflict with other traffic, or in compliance with the law or the directions of a police officer or traffic control device. None of these situations was present here. The heart of the matter was that the truck was so stopped for the convenience of the truck driver to ease his job of delivery. He stated that if he had parked around the corner he was certain most of his soft drinks would have been taken from his truck while he was making deliveries. He seemed to rely on the fact that it was the custom of truck drivers who service the small businesses along the street to park their vehicles as he had done. This however did not excuse his violation of the ordinance and has no bearing on the fact that his action in doing so constituted negligence.
Of more importance however is the determination of whether this negligence was actionable in this case.
Counsel for Pepsi-Cola argues that if there is any negligence on his client’s part involved, it was merely passive negligence and as such is not actionable in this case, citing Dixie Drive It Yourself Sys. New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), and Monger v. McFarlain, 204 So.2d 86, (La.App. 3 Cir. 1967).
We will not apply the principle of passive negligence in this case. The status of that theory is at best unclear in view of the decision in Dixie Drive It Yourself, supra.
However in that case we find rationale which is helpful to us in solving the problem which we face here. The Dixie decision also involves the violation of a parking ordinance, though the consequences of that action were quite different. In reviewing the effect of the violation of such an ordinance upon the determination of actionable negligence the Supreme Court stated:
“The essence of the present inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the statute. It is a hazard problem. * * * ” 242 La. at 488, 137 So.2d at 304.

“In a scholarly article entitled ‘Proximate Cause in Louisiana’ by Jesse D. McDonald, 16 Louisiana Law Review 391, the principle is stated as follows:
“ ‘ * * * Since the law never gives absolute protection to any interest, recovery will be allowed only if the rule of law on which plaintiff relies includes within its limits protection against the particular risk that plaintiff’s interests encountered. This determination of the particular risks to plaintiff that fall within the ambit of protection of the rule of law on which plaintiff relies is the determination of the issue of proximate cause.’ ” 242 La. at 491, 137 So.2d at 305. * * *
Applying this rationale to our situation we find that in our case the risk created by the defendant Pepsi-Cola’s violation of the ordinance, was not a substantial factor in causing the child’s injury.
In this case the sole factor which brought about the injury was the action of the child and her companion in proceeding out into the street in the middle of a block without first ascertaining traffic conditions.
Framing this another way it is our opinion that the injury which was suffered by the young child was not one which the statute was contemplated to protect. Had the truck been legally parked next to the curb the result to the young child would have been the same had she run out from in front of it into the street into the path of the approaching taxi. It was this action by the child which was the sole proximate cause of her injury.
For the reasons hereinabove assigned the decision of the trial court is affirmed; appellant to pay the costs of this appeal.
Affirmed.

. Traffic Ordinance of City of New Orleans, Section 38-165 provides in pertinent part:
“Section 38-165. Places where parking, etc., is prohibited.
“No person shall stop, stand or park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with law or the directions of a police officer br traffic-control device, at any of the following places:
* *
“(16) Upon the travelled portion of any roadway, except to yield to other traffic or as directed by a signal or sign, or as directed by a police officer.”
Traffic Ordinance of City of New Orleans, Section 38-146 provides:
“Section 38-146. Normal parking in roadway.
“No person shall stand or park a vehicle in a roadway other than parallel with the edge of the roadway headed in the direction of lawful traffic movement and with the right-hand wheels of the vehicle within eighteen inches of the curb or edge of the roadway, except as otherwise provided in this article.
“The City Council may, after special study, designate locations where angular parking will be allowed. Such locations shall be so signed and no other type of parking will be permitted. (M.C.S., Ord.No.1434, § 1, 8-7-58.)