BLANCHE, Judge.
Plaintiffs-appellees, Gerald E. Fackrell, Mrs. Marie B. Fackrell and Mrs. Louise B. Broussard, brought this suit against Claude Gulley, d/b/a C. G. Mail Transport, Charles L. Williams and Allstate Insurance Company, defendants-appellants, for damages arising out of an automobile collision. On or about July 20, 1968, at approximately 4:30 o’clock P.M. plaintiffs were on the Plank service road leading to a shopping center in which is located Gibson’s No. 1 Discount Store. On reaching the intersection of the service road and Oaklon Street, said intersecting streets forming a “T” intersection, a two and a half ton International truck operated by Charles Williams and owned by Claude Gulley ran a stop sign, which directed traffic proceeding on Oaklon Street to stop before entering into the service road, and collided with a 1966 Chevrolet operated by Mrs. Marie B. Fackrell. Mrs. Broussard was a passenger in the right, front seat of the Chevrolet.
The case was tried before a jury which awarded damages in favor of Mrs. Marie B. Fackrell in the sum of $4,000 and in favor of Mrs. Louise B. Broussard in the sum of $12,500 and against Gulley and Allstate. Issue as to the defendant Williams was never joined. The medical and other special expenses were stipulated by and between counsel. The jury found that Williams, the driver of the truck, was negligent and that such negligence was the proximate cause of the accident sued upon, and on appeal appellants concede the negligence of Williams. At trial plaintiffs-appellees sought to hold the defendant Gulley responsible under the doctrine of respondeat superior and also sought to hold the insurer of Mr. Gulley, Allstate Insurance Company, under the theory that Gulley’s employee Williams was using the vehicle with the permission of his employer, that such use was within the scope of the permission granted and that, therefore, Williams as such was an insured under the policy issued to Gulley. Special findings were requested of the jury and the jury found that (1) Williams was acting within the course and scope of his employment at the time of the accident and (2) Williams was using the truck with the permission of his employer and such use was within the scope of such permission. Thus, the jury supported the plaintiffs’ theories of the case, and defendants-appellants, Gulley and Allstate, on appeal assign as error the aforesaid special findings of the jury, contending that the *370 jury abused its discretion in granting the awards stated above. We affirm.
The evidence shows that Mr. Gulley had engaged in a contract with the federal government to haul mail from Baton Rouge to Alexandria and return. In this connection, he employed Williams to drive one of his trucks to haul the mail, such hauling being done on Monday through Friday of the week. After each haul was completed by Williams and on weekends, the truck owned by Gulley was to be parked at a Fina Service Station on the Scenic Highway within the City of Baton Rouge. Williams retained possession of the keys to the vehicle and was virtually unsupervised as to the manner in which he performed his duties. In addition, Gulley had another contract with a pharmaceutical house in Shreveport, Louisiana, whereby he was to deliver certain drugs from the drug firm in Shreveport to their customers in Baton Rouge. These drugs were brought to Baton Rouge by a Mr. Salley who was also employed by Gulley to haul mail on a route from Shreveport to New Orleans and return. Mr. Salley also worked on weekends at the Fina Service Station, and after his arrival in Baton Rouge subsequent to delivering the mail, the drugs would customarily be transferred from the truck assigned to him to Williams’ truck in order that Williams could make delivery of the drugs on the following Saturday morning. On the date of the accident Williams used Salley’s truck for the purpose of making the deliveries instead of using the truck assigned to him. On that date only one delivery was scheduled to be made and that was to Gibson’s No. 1 which was located in the shopping center at the intersection of the Plank Road and the Airline Highway not more than a block and a half from the scene of the accident. According to Mr. Gulley, the delivery was supposed to Lave been made by Williams in the morning hours, although the specific time of the delivery was never established. After making the deliveries of drugs, it was Williams’ duty to return his vehicle to the Fina Service Station which was to serve as a terminal for both of Gulley’s trucks. When Gulley’s trucks were not in use in his business, Mr. Gulley’s instructions were to the effect that they were to be parked at the Fina Service Station where they were to be serviced until used again in Gulley’s business.
The accident occurred at 4:30 o’clock P. M. under circumstances described by Mr. L. H. Bennett, a witness for the defendant. Mr. Bennett testified that he and his son were traveling north on the Plank Road. At a point on the Plank Road just north of the traffic signal which controls traffic eventually leading into the service road which must be utilized to go to Gibson’s Store No. 1, he first noticed the truck driven by Williams. At that time Williams was attempting to pass a wrecker and in so doing ran into or “nudged” the car being towed by the wrecker. Upon observing this, Bennett ordered his son who was driving the car to give chase in order that he might get the license number so as to establish the identity of the truck. The chase led them north away from Gibson’s Store No. 1, then to the east through a subdivision known as Zion City, then south, and finally west onto Oaklon to the point where Williams ran the stop sign on the service road and collided with the plaintiffs.
Thus, it is argued by appellants that Williams was not in the course and scope of his employment because when first observed by Bennett headed north away from Gibson’s Store No. 1 and thereafter he was attempting to avoid apprehension for his illegal driving activities on the Plank Road at the time of the accident. It is further argued that he was not operating the vehicle within the scope of permission granted by Claude Gulley, the named insured. This argument is pertinent to the determination of whether Williams was an insured under the omnibus clause of the Allstate policy which provides that the actual use of the vehicle must be within the scope of the permission of the named insured. In support of this contention it is submitted that according to his instructions Williams was to deliver the drugs before noon on the day of *371 the accident and that, accordingly, he must have been using the vehicle for his own purposes at the time of the accident inasmuch as he only had one delivery to make.
The law of Louisiana is clear that where an employee is driving his employer’s vehicle at the time of the accident he is presumed to be acting within the course and scope of his employment at the time of such accident, and his employer will be responsible for any damages sustained by third persons caused by the negligence of his employee. Cofield v. Burgdorf, 238 La. 297, 115 So.2d 357 (1959), Longoria v. Progressive Mutual Insurance Company, 204 So.2d 93 (La.App.2nd Cir. 1967), Coon v. Monroe Scrap Material Company, 191 So. 607 (La.App.2nd Cir. 1939), Simms v. Lawrence Brothers, 72 So.2d 538 (La.App.2nd Cir. 1954), and Raney v. McDaniel, 165 So.2d 593 (La.App.1st Cir. 1964), which latter case cites Mabry v. Fidelity & Casualty Company of New York, 155 So.2d 44 (La.App.2nd Cir. 1963). The presumption is rebuttable by the employer, but the foregoing cases point out that only strong and convincing evidence will be sufficient to overcome such presumption. Thus, the principal question for decision is whether the evidence introduced by defendants-appellants at the trial was sufficient to overcome the presumption relied upon by appellees.
In resolving this issue we find no basis for substantial disagreement with the jury. The jury had evidence that Williams, an employee of Gulley’s, was to make a delivery of drugs to Gibson’s Store No. 1; that the delivery was, in fact, made; that while the exact time of the delivery was never established, the accident occurred just a short distance from Gibson’s and in the vicinity of where he should have been if on his employer’s business; and that shortly before the accident he was found proceeding north on Plank Road at a point just north of the service road leading to the place where he was to have made that delivery. The evidence that Williams was seen proceeding north on the Plank Road does not, in our opinion, overcome the presumption that he was on his employer’s business at the time of the accident. It is argued by appellants that such a route leads away from Gibson’s, and, on the other hand, ap-pellees argue that such a route could have conveniently been utilized by him to return the truck to the Fina Service Station, though admittedly it was not the most direct route. The other evidence offered by defendants that Williams was attempting to escape detection for his improper driving on Plank Road is the strongest evidence of a deviation from his master’s employment. However, on this question the jury had evidence from Mr. Bennett who testified that when he questioned Williams after the accident that Williams told him he was on his employer’s business and was late. Whether Williams knew he was being followed and was trying to escape from Bennett is not reflected in the evidence. What Williams was actually doing at the time may have been conclusively resolved by the defendants had they sought to elicit his testimony. If his employer’s statement that he was in the federal penitentiary for stealing mail is accurate, there would have been no reason why his deposition could not have been obtained.
Where a party has access to a witness who has important information concerning a pivotal fact in issue and fails to call that witness to testify either in the form of testimony in court or through deposition, a presumption is raised that the witness’ testimony will be detrimental to the party’s case. Especially is this true where the parties such as appellants have the burden of proof in overcoming the presumption in plaintiffs’ favor. The failure of defendants to call Williams as a witness justifies the assumption that his testimony would be detrimental to their case. Price v. Lanoue, 190 So.2d 478 (La.App.1st Cir. 1966); O’Connor v. St. Louis Fire & Marine Insurance Company, 217 So.2d 750 (La.App.4th Cir. 1969). Thus on this important question of fact, the jury was justified in finding that Williams was acting within *372 the course and scope of his employment at the time of the accident and that defendants failed to carry the burden of proof in overcoming the presumption which attaches when an employee is driving his employer’s vehicle at the time of the accident.
The question of deviation from route or line of duty as a question of fact for jury determination is discussed in Blashfield Automobile Law and Practice, Section 253.78, as follows:
“Section 253.78 Deviation from Route or Line of Duty — Question of Law or Fact
“The extent of deviation by a servan]: from the usual route or method in performing service directed by the master may be so slight relatively that, as a matter of law, it can be said that it does not constitute a complete departure from the master’s service, and that the servant is still engaged in his master’s business, so as to render the latter liable for his negligence in driving. Under other circumstances, the deviation may be so great and unusual that it can be said as a matter of law that it does constitute an abandonment of the master’s service.
“However in most cases, that is, cases falling between these extremes, the liability of the master for the negligence of the employee in the course of some deviation is a question of fact for the jury to decide. The deviation may be so uncertain in extent or degree that the inference must be drawn by the trial jury as to whether or not it has been such an abandonment as to relieve the master from responsibility for the servant’s action.
“Where the evidence shows that the employee zvas not taking the shortest or most direct route for the performance of the duties of his employment, or had stopped en route, whether the deviation was so substantial as to constitute a departure from the employment, or whether he was nevertheless acting within the scope of his employment, is generally a question of fact for the jury. Whether the place where the accident occurred was or was not a place at which the servant could have been while he was engaged in the performance of the duties of his employment is a factor in determining whether submission to the jury was authorized.” (Emphasis supplied)
Neither would the fact that the delivery may have been made after 12:00 o’clock noon have overcome the presumption that Williams was acting within the course and scope of his employer’s business. The agent or servant acting contrary to the instructions of his master is discussed in Bordelon v. Great American Indemnity Company, 124 So.2d 634 (La.App.3rd Cir. 1960):
“ * * * The jurisprudence in this state is that an employer is responsible for the wrongful acts of his employee committed in furthering the business of the employer and within the scope of the employment even though the servant acted contrary to or in defiance of the express rules or instruction of his master. See Starnes vs. Monsour’s No. 4, [La.App.] 30 So.2d 135, Dunn vs. Campo, [La.App.] 179 So. 102 and Cusimano vs. A. S. Spiess Sales Company, 90 [96] So. 118, 153 La. 551 [Cf. 57 C.J.S. ‘Master and Servant’, Section 570 [d] (9), p. 313: ‘The test of the master’s responsibility for the acts of his servants is not whether such act was done in accordance with the instructions of the master to the servant, but whether it was done in the prosecution of the business that the servant was employed to do, and an act is regarded as “authorized” in the legal sense if it is incidental to the performance of the duties entrusted to the servant even though it is in disobedience of the master’s express orders and instructions.’] * * * ” (Bordelon v. Great American Indemnity Company, 124 So.2d 634, 638-639)
*373 Appellants rely on Mabry, cited supra, and argue that the facts here satisfy the test set forth therein to determine whether an employee is engaged in the course and scope of his employment at the time of the accident. In that case the Court stated that the following questions should be considered in a determination of such issue:
“In determining whether an accident arose out of an employment, it is necessary to consider only the questions: (1) Was the employee then engaged in his employer’s business and not merely pursuing his own business or pleasure, and (2) did the necessities of the employer’s business reasonably require the presence of the employee at the place of the accident at the time the accident occurred? * * *” (Mabry v. Fidelity & Casualty Company of New York, 155 So. 2d 44, 45)
We have no quarrel with the foregoing rule but find it inapplicable to the case here where the question of what the employee was doing at the time of the accident is undetermined.
In Mabry the plaintiff sought workmen’s compensation benefits from his employer as a result of injuries sustained by him when he tripped and fell on an icy sidewalk. The evidence clearly showed that the plaintiff slipped when he attempted to go in a bakery for the purpose of buying bread for his wife to feed the birds. There was no question as to what he was doing at the time of his injury. In the case at hand the actions of Williams were unaccounted for at the time of the accident, and since he was not called as a witness, the jury could only infer what he was doing. Unfortunately for appellant, the inferences drawn from the evidence did not overcome the presumption that he was acting in the course and scope of his employment. From the foregoing it is likewise obvious that there is no error in the finding that Williams was using the Gulley truck within the scope of the permission granted and was an insured under the omnibus clause of the policy issued by Allstate.
Lastly, we are called upon to review the awards for general damages made to plaintiffs by the jury. Both plaintiffs were hit by a two and a half ton truck and received a great deal of trauma. In addition to general bruises and contusions, Mrs. Louise B. Broussard, who was sixty-eight years old at the time of the accident, received a cervical strain which necessitated her having to be placed in traction and having to wear a cervical collar. Dr. Francis Charles McMains found marked arthritic changes present in the mid-cervical area and was of the opinion that she suffered some permanent disability as a result of the injury to her cervical spine. Additionally, she received an injury to her left thumb and wrist and with the passage of time her symptoms increased in intensity. Dr. McMains immobilized the wrist and thumb for a period of approximately three weeks and injected the thumb with cortisone without result, finally operating in February of 1969. During the two months following the operation, she received whirlpool treatments for her thumb and also traction and ultrasound treatments to her neck. Over the nine-month period that she was under the care of Dr. McMains, she made office visits for physical therapy a minimum of three times a week. We have evaluated her injuries according to the facts and circumstances here presented and have considered the awards submitted by counsel and find no abuse of the “much discretion” of the jury in this regard in making an award of $12,500 to Mrs. Broussard. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967) ; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
With regard to the injuries of Mrs. Marie Fackrell, we are of the opinion that *374 the jury abused its discretion in awarding her $4,000 general damages. She was treated by Dr. William M. Moody for two months and he described her injury in a report offered in evidence as a moderately severe cervical sprain. He stated that she was approximately 75 percent better by August 29, 1968, and on September 19, 1968, he discharged her as cured. She missed two weeks of work after the accident but has continued to work since that time. Her medical expenses were $190. After being discharged by Dr. Moody, she later saw Dr. McMains on December 4, 1968, and he found limitation of motion in the neck which he felt would calm down to a certain extent. She was seen again by Dr. McMains in April and August of 1969 and he felt that she had no permanent disability and would become asymptomatic. Our evaluation of the facts and circumstances surrounding Mrs. Fackrell’s injuries and treatment convinces us that the award should be reduced to $2,000 inasmuch as we view the present award as greatly out of proportion to past awards for similar injuries. Nesbit v. Travelers Insurance Company, 218 So.2d 396 (La.App.2nd Cir. 1969); Palmisano v. United Services Automobile Association, 217 So.2d 774 (La.App.4th Cir. 1969); Compton v. Commercial Standard Insurance Company, 224 So.2d 506 (La.App.2nd Cir. 1969) ; Jennings v. Allstate Insurance Company, 241 So.2d 778 (La.App.3rd Circuit 1970) ; Ducote v. Allstate Insurance Company, 242 So.2d 103 (La.App.1st Circuit 1970). These are recent cases which we regard as relevant for comparative purposes.
For the above and foregoing reasons, the judgment of the trial court is affirmed in all respects except as to the judgment in favor of Mrs. Marie B. Fackrell, and the same is amended by reducing the award for general damages in her favor to the sum of $2,000. The costs are to be paid by defendants-appellants.
Affirmed in part and amended, and as amended, affirmed.