## GILBERT v. TROTTER et al.*
### No. 4929.

Court of Appeal of Louisiana.
Second Circuit.
May 2, 1935.

Thompson & Dorman, of Monroe, for appellant.

Madison, Madison & Fuller, of Bastrop, for appellees.

TALIAFERRO, Judge.

Plaintiff brings this suit against A. T. Trotter, the Interstate Natural Gas Company, Inc., alleged employer of Trotter, and American Surety Company of New York, to recover damages for personal injuries to her and for X-ray and physicians' bills, resulting from, and necessarily incurred on account of, the alleged negligence and carelessness of Trotter on the night of August 12, 1933.

It appears that near the hour of 10 o'clock on said night, Trotter, while operating a Chevrolet coach automobile, alleged to belong to the gas company, drove into Short Oak street in the city of Monroe, La., for the avowed purpose, according to his evidence, of locating one of his cousins, and,' after satisfying himself that this cousin did not live on this street, he undertook to turn the car around in front of the three-room tenant house occupied by plaintiff. In the effort to reverse the course of the car, he inadvertently struck the light front porch of said tenant house, disengaging it from the building and causing it in part to fall to the ground. Plaintiff, hearing the crash of the impact and falling of the porch, hurried to the front door opening on to the porch, and, not knowing what had happened, stepped from the door and fell heavily against a lattice wall on her left side, and upon the porch some three or four feet below its normal position. The night was dark. There were no lights to illuminate the front of the building and its surroundings. Rain was falling.

The gas company was impleaded on the theory that it owned the automobile driven by Trotter and that he was its employee and, at the time of the accident, engaged in the performance of the duties of his employment, on a mission for it, and acting within the scope of his authority. The gas company is protected against loss herein by policy contract issued to it by the insurance company; hence the insurer was impleaded as defendant.

In the alternative, plaintiff avers that, if it should be found and held that Trotter was not acting within the scope and course of

his employment with the gas company at time of the accident, that company and its insurer are still responsible for his acts of carelessness and negligence because he was then driving the automobile with the consent and permission of its owner, the gas company. and, under the terms of said insurance contract and the laws of the state, that fact fixes responsibility of each of them to her.

The gas company denied that the car driven by Trotter belonged to it, and denied that he was, at the time of the accident, in its employ, but, on the contrary, avers that at said time the car was owned by the Richland Compressing Station, Inc., a separate and distinct corporation, and that Trotter was its employee; that he was not at the time of the accident on any mission for this defendant, nor acting in furtherance of its business, and denies that the car was being operated with its consent or permission at time of the collision with the porch. In the alternative, it is affirmatively alleged that said car was being operated at the time alleged without its permission and contrary to instructions given said A. T. Trotter, and that he was at the time on a mission of his own, neither within the scope of his employment nor in any manner connected with the furtherance of defendant's business or interest. In the alternative, secondly, it pleads that plaintiff was informed and warned as to what had happened to the porch. and knew, or should have known, that it would be dangerous to attempt to go out thereon; and therefore the injuries sustained by her as a consequence of her falling on the porch resulted from her own fault and negligence; her contributory negligence in this respect is specially pleaded in bar of her right to recover. A third alternative defense is alleged, but, as it is not to any extent supported by any evidence, and evidently has been abandoned, we abstain from cumbering the record with a synopsis of it. In all other respects this defendant denies the essential allegations of fact alleged by plaintiff as a basis of her right to recover.

The insurance company's answer is virtually the same as that of the gas company. In addition, it admits that the car driven by Trotter was covered by the policy issued by it to the gas company, but avers that the insurance therein stipulated was only effective, as to said car, while it was being used on the business of the insured and with its permission and consent; and avers that "said car was being operated at the time alleged without the permission of Natural Gas Company, Inc., and contrary to instructions given by said company to said Trotter."

Trotter, in his answer, admits driving the car into plaintiff's porch, as alleged, and avers that at the time he was employed by the Richland Compressing Station, Inc.. to transport workmen daily from Monroe, La., to the plant of his employer in Richland parish, and that often he would have from a few minutes to an hour to wait in Monroe before time to gather up a load of workmen and transport them to the plant; that on the night of August 12, 1933, while in Monroe, he had some time to his credit, and, contrary to his employer's instruction not to use the car for his personal business, he drove it into Short Oak street in search of a cousin, which street, he avers, was not on the route which he would take either in collecting the crew or in transporting it, and, while turning the car around, he backed into plaintiff's house with the results above mentioned. The alternative defenses set up by the gas company and the plea of contributory negligence advanced by it are adopted by this defendant. He additionally avers that plaintiff did not attempt to go on to the porch while he was present.

Plaintiff's demands were rejected, except as against Trotter. She was given judgment for $500 against him, and she appealed.

The carelessness and negligence of Trotter in backing the car into plaintiff's porch are clearly established. He does not seriously deny the fact. He indicated a willingness. to pay for repairing the damage done. The lack of contributory negligence of plaintiff as a factor in the case is also clearly proven. Therefore these two phases of the case will not be further discussed.

The issues propound the following questions for determination, viz.:

(1) Was Trotter an employee or servant of the gas company while operating the car involved in the accident, in transporting workmen from the city of Monroe to the plant of the compressor company in Richland Parish, and back to the city?

(2) If this question is decided in the affirmative, and then conceding that Trotter had turned aside from the duties of his employment when he drove the car into Short Oak street, had he resumed his duties and reentered his master's employment at the moment he backed the car into the porch?

(3) If the first question is decided in the affirmative, but the second one in the negative, then is the insurer responsible to

plaintiff under the "Additional Assured Clause" of the policy?

If Nos. 1 and 2 are both decided in the affirmative, it will obviously be unnecessary to discuss or pass upon number three.

█ It is averred in the gas company's answer " * * * that, said Richland Compressing Station, Incorporated is a separate corporation, the stock of which is owned by various natural gas producing and pipe line companies; and that defendant supervises and manages the operation of the property and plant of said company under an agreement with it, the property and employees of said company being separate and distinct from those of defendant."

The nature of the agreement referred to is not shown.

There are several compressor stations in the Richland gas field, and defendant operates all of them under the contract referred to. Mr. J. R. Struben does the hiring and discharging of all employees of both companies. His official position is described as being "Superintendent of Compressor Stations for the Interstate Natural Gas Company." He employed Trotter and delivered into his custody the car in question and authorized him to transport workmen from and back to Monroe. Trotter, answering the direct question, says that on August 12, 1933, he was employed by "Richland Compressor Station," and later on in his testimony gave the following answers to the questions quoted, viz.:

"Q. When did you go to work? A. This makes my third year. I was working for the Interstate before I drove the automobile.

"Q. You were not driving this 1932 coach at the time he gave you these orders? A. No, sir, driving a 1930 Ford."

The truth of the matter is, this colored man does not know for which company he was working. Their relations were so closely interwoven it was impossible for him to know definitely. This testimony means, we think, that, before this man was allowed to operate a car to and from Monroe, he was performing a different character of service for the gas company. The testimony of Mr. Struben was not taken. Therefore we are without the assistance his evidence would give us. Mr. Salisbury, assistant treasurer of both the gas and compressor companies, testified as a witness, but was not asked, and consequently did not state. for whom Trotter was working when the accident occurred. No other officer of either company gave evidence in the case. In view of these facts and circumstances, we think plaintiff at least made out a prima facie case in support of her allegation that Trotter was in reality a servant of the gas company when the accident occurred. That company needed men to operate the compressor plant which, it is admitted, was being operated by it. The stockholders and officers of each company are largely identical. The situation was such that it devolved upon the gas company, if it chose to do so, to introduce countervailing proof to overcome the prima facie case made out by plaintiff. Another circumstance supporting plaintiff's contention is that it has been satisfactorily proven that the car driven by Trotter belonged to the gas company. This ownership is denied by it in its answer. Neither Trotter nor Salisbury said who owned the car. They were not asked the question. The insurance policy, a copy of which was introduced in evidence without objection, discloses that the car was included in its coverage. Among the declarations embodied in the policy is the following: "Item 6. The automobiles are (a) owned by the above named assured"; and later on in the policy appears the following, viz.: "The Assured hereinbefore referred to, is the Assured designated in the following Declarations, of which those numbered one to eight, inclusive, the Assured, by the acceptance of this Policy, declares to be true."

This is the only direct evidence in the record bearing on the car's ownership. It is conclusive of the question. Certainly the insurer would not be committing itself to responsibility to defendant for the operation of automobiles owned by another corporation; and it seems unreasonable that defendant would be paying for insurance protection on an automobile not owned or operated by it.

In addition to this, the insurance company. in its answer, avers that, when the accident happened, Trotter was operating the car contrary to the gas company's instructions. Had he been the servant of the compressor company, there is no good reason, so far as we can see, why the gas company would have given him instructions.

█ Trotter's schedule required him to make four trips from the compressor plant to Monroe for workmen, and return, daily. He reached Monroe at about 9 o'clock the evening of the accident, and was due to start back with the laborers at 10 o'clock. It was his duty to drive around the city and pick up the workmen. However, before beginning this, he was instructed to leave the car in a

garage many blocks from plaintiff's residence.

After plaintiff had fallen down on her damaged porch, Trotter got out of the car and assisted her back into the living room. She tried to induce him to talk to her about repairing the damage to the porch and says he replied, "I haven't got time; I've got to go take my boss to work." He immediately drove off in the car in the direction from whence he had come, and within fifteen minutes had located the workmen, living on three different streets, and was on his way back with them to the plant, nearly 20 miles away. Plaintiff lives in a section of the city of Monroe given over to negro residents. Some of the workmen who returned to the plant with Trotter, after the accident, lived only a few blocks from her. It therefore appears that Trotter, when he resumed travel after the accident, was closer to some or all of the workmen than he would have been had the car been at the time in the garage in which he was instructed to leave it. To enter upon the task of locating the workmen, it was not necessary that he return to the garage or to any other place in the city save where these workmen lived or were known to be. Therefore, while he momentarily turned aside from his master's business to engage in a personal mission, we think he re-entered the master's employ, and his status as its servant was immediately resumed, when he decided to abandon the deviation and turned the car around for the purpose of performing the duty to the master he was employed to perform. It does not definitely appear that he immediately began the task of locating these workmen, but, in view of the fact that they were in different parts of the city and that they were located within fifteen minutes, argues strongly that little or no time was lost by him, after he left the scene of the accident, before looking up the whereabouts of the workmen. His own statement when he left plaintiff's home clearly indicates his intention in this respect.

The most recent, as well as leading, case on this question, pronounced by our own Supreme Court, is that of Cusimano v. A. S. Spiess Sales Co., 153 La. 551, 96 So. 118, 119. The facts of that case are strikingly similar to those of the case at bar. There the court said:

"It is not every deviation from the direct line of his duties on the part of an employee that constitutes a turning aside from his master's business. Duffy v. Hickey, 151 La. 274, 91 So. 733. Nor does the master's liability cease merely because the servant is acting contrary to, or even in defiance of, express instructions from his master, Winston v. Foster, 5 Rob. 113. But the servant must have abandoned and turned aside completely from his business, to engage in some purpose wholly his own, before the master ceases to be liable for his acts.

"And even though a servant may have turned aside from the master's business, yet the liability of the master reattaches as soon as the servant reassumes the business of his master.

"And the authorities hold that, when the servant, having completed the purpose for which he turned aside, is returning to resume his duties, he is, whilst so returning, engaged in the business of his master."

The last paragraph finds peculiar application to the facts of the present case. The brief lapse of time involved and Trotter's own testimony make it quite clear that when he left the scene of the accident it was his intention to resume his duties to the master. He said he was going to "take his boss to work." He was in reality going to take his boss' employees to work.

Diligent counsel of defendants cite and quote from many cases arising in other jurisdictions which appear to support the contention that Trotter's status as a servant of the gas company had not reattached at the time he damaged plaintiff's home. These are persuasive, but we feel that our own jurisprudence bearing upon the question is binding on us and should be followed.

■ Plaintiff asks for, and, we think, is entitled to, an increase in the amount of judgment given her by the lower court. She is a negro, unmarried, and twenty-five years of age. Before this accident her physical condition was good, save a chronic pelvic infection. She rarely ever needed the services of a physician. When she fell from the door of her home onto the dislocated porch, it was resting at an angle. Part of her body struck a lattice wall and part of it the uneven floor. The fall was sudden and heavy, and one of her attending physicians, after viewing the scene, stated it was surprising her injuries were not much more serious than he found them to be. We are convinced from the medical testimony that she sustained a serious strain of the sacroiliac joints, which was not entirely well when the case was tried nearly ten months after the accident. There were contusions and bruises about the body for many days, accompanied by sharp pains. She was confined to bed

for about 60 days, under the treatment of a skilled physician, who states that it may be as long as another year before she recovers entirely from the injuries, and goes further to say she may never recover entirely from the breaking of the ligaments about the involved joints. The jar to her body evidently caused a flare-up of a dormant pre-existing infection of the female organs. The injuries have caused her much pain and discomfort. She has not been able to follow her avocation as cook since the accident. Doctors' bills, and other expenses incurred because of her injuries exceed $100. All things considered, we believe an award of $1,200 will adequately indemnify plaintiff for her injuries and suffering and the expense bills incurred.

For the reasons herein assigned, the judgment appealed from is reversed and set aside in so far as it rejects plaintiff's demand against Interstate Natural Gas Company, Incorporated, and American Surety Company of New York. and for said reasons there is now judgment in plaintiff's favor and against all defendants in solido for $1,200, with legal interest thereon from judicial demand herein, and all costs.