391 So.2d 74 (1980)
J. Fant TAYLOR
v.
Percy LUMPKIN, Mary Lumpkin, and "ABC" Cain.
No. 11340.
Court of Appeal of Louisiana, Fourth Circuit.
November 12, 1980.
*75 Chaffe, McCall, Phillips, Toler & Sarpy, Jarrell E. Godfrey, Jr., New Orleans, for plaintiff-appellee.
Sciambra, Souhlas & Edwards, William H. Edwards, Metairie, for defendants-appellants.
Before REDMANN, GULOTTA and BARRY, JJ.
GULOTTA, Judge.
In this intersectional automobile accident case, defendants appeal from a judgment in favor of plaintiff in the sum of $703.91, the repair cost of plaintiff's automobile. The judgment was rendered not only against Percy Lumpkin, the fifty-one year old driver of the automobile at the time of the accident, but also against Mary Lumpkin, Percy's mother and the owner of the automobile, by whom Percy was employed in his mother's nursery school as a driver transporting children to and from the school.
At approximately 10:00 a.m. on October 20, 1977 Patricia Taylor, plaintiff's daughter, was driving plaintiff's automobile in a southerly direction (in the direction of uptown) on South Carrollton Avenue. South Carrollton Avenue is a four-lane boulevard divided by a wide neutral ground. Percy Lumpkin, driving on Olive Street, stopped at the intersection of Olive and South Carrollton Avenue, in obedience to a stop sign on Olive Street. According to Lumpkin, when he reached the intersection he stopped for the stop sign on Olive and then "pulled off across" the first two lanes of Carrollton Avenue into the neutral ground area. Lumpkin testified that he did not stop in the South Carrollton Avenue neutral ground but slowed up and looked to his right. He saw an automobile coming toward him "in the second lane from the neutral ground", which apparently switched lanes and struck the rear of his automobile while it was in the "far lane". He stated that he proceeded across the intersection and "got hit right past the neutral ground."
Patricia Taylor, the driver of plaintiff's automobile, testified that while traveling at a speed of 30 miles per hour on South Carrollton, as she approached the Olive Street intersection she noticed a yellow station wagon stopped at the neutral ground "like he was waiting for [her] to pass." When she had reached a point approximately 30 feet from the intersection, the station wagon "just took off in front of [her]." She put on her brakes, but was unable to stop in time, and the front of her automobile collided with the side of defendant's car. The right-rear panel of defendant's car was damaged and the Taylor automobile was damaged across the front end.
In a shot-gun approach defendants contend that because there is no testimony that the estimator of the automobile damage stated that the damage was caused from the accident, plaintiff failed to substantiate her damages; that because the witness who identified the N.A.D.A. Book (offered to establish used car values) was not in the business of buying and selling used cars, he was not the proper party to identify the books, and the proper foundation for introduction of these books was not laid; that *76 the trial judge erroneously permitted testimony about traffic offense convictions of the driver of defendant's automobile; and, because no showing was made by plaintiff that the defendant's automobile was being used by the driver for his employer's benefit or business at the time of the accident, the trial judge erroneously cast in judgment Mary Lumpkin, the employer of the driver of the defendant vehicle.
We find no merit to any of the evidentiary arguments raised by defendants. According to the testimony of the service manager of an automobile painting and repair shop, who made the estimate of the damage to the automobile, the cost of repairs amounted to $703.91, the amount of the judgment in the trial court. His testimony was uncontradicted. Although the estimate was made approximately four months post-accident, we fail to find that the estimate included damage to the plaintiff's vehicle other than that which occurred in the October 20, 1977 accident, as suggested by defendant. Plaintiff driver testified that the front of her automobile was damaged in the accident. The estimate introduced into evidence included repairs only to the front of plaintiff's automobile. Furthermore, Patricia Taylor testified that prior to the accident, plaintiff's automobile had not been damaged and that the estimate prepared by the estimator was damage resulting from the accident. Mrs. Shirley Taylor, Patricia's mother, testified that the damage referred to in the estimate resulted only from the October 20th accident. Defendants offered no evidence to rebut the estimate of damage. Under the circumstances we cannot say the trial judge erred in accepting the estimate as the damage sustained by plaintiff's automobile as a result of the accident.
In connection with the amount of the award we find no substance to defendants' claim that the trial judge erred in permitting the introduction into evidence of the N.A.D.A. book to establish the used car value of plaintiff's automobile. Although the Taylor car was not repaired and was subsequently sold for $500.00, plaintiff established the value of the damage to the automobile. Evidence of the used car value at the time of the accident served only to show that the Taylor automobile was valued in excess of the amount of the damage sustained. Plaintiff is not seeking any amount for loss of value of the automobile in addition to costs of repair. Under the circumstances, defendants were not prejudiced by the introduction of the N.A.D.A. book.
Returning now to defendants' third evidentiary argument, that testimony concerning Percy Lumpkin's conviction of a traffic violation was erroneously admitted, we conclude this error, if it was indeed an error, was harmless. No evidence was introduced pertaining to traffic convictions relating to the facts surrounding the occurrence of the accident. According to Patricia Taylor, the driver of defendant's automobile was convicted for hit-and-run driving. We give no weight to this testimony.
The most serious complaint raised by defendants is that the trial judge erred in casting in judgment Mary Lumpkin, the defendant driver's employer. In Martin v. Brown, 240 La. 674, 124 So.2d 904 (1961) the Supreme Court concluded that the owner of an automobile is not liable for damages caused while his automobile is being operated by a third person, with his knowledge and consent, unless he was present or the third person was his agent, servant, or employee, and was acting within the scope of his agency or employment. It is undisputed that Mary Lumpkin was not present in the automobile while the accident occurred. Further, in Windham v. Security Ins. Co. of Hartford, 337 So.2d 577 (La.App. 4th Cir. 1976), writ denied 341 So.2d 407 (La.), we stated that an employee who is driving his employer's vehicle at the time of an accident is presumed to be acting in the course and scope of his employment and his employer is responsible for damages sustained by a third party as a result of the employee's negligence. Such a presumption is rebuttable by an employer, but only by strong and convincing evidence. In Windham we went on to say that there exist no hard and *77 fast criteria to determine whether an employee using his employer's vehicle is acting within the course and scope of his employment. Each case must depend upon its own facts; however, important considerations include whether the employee was acting in the service of or about his employer's business and whether the vehicle was being used in such a manner as to benefit the employer.
Resolution of this question is difficult because of the inability of an offended driver to be in possession of knowledge pertaining to the relationship between the driver-employee and the owner-employer. In the absence of statements made by an offending driver or the employer, or of information obtained through discovery or depositions, or any other evidence, documentary or otherwise, this question becomes one of credibility. Plaintiff, in the instant case, failed to offer any evidence supporting the allegations of the petition that the driver was on a mission for his employer at the time of the accident. Although no reasons were assigned by the trial judge it is apparent that in awarding judgment against the employer, the trial judge concluded that defendants failed to overcome the presumption that the driver was on a mission for his employer at the time of the accident and that plaintiff is entitled to recovery against the employer on the basis of respondeat superior.
Mrs. Mary Lumpkin testified that her son had lived with her and was employed because he was "on disability." Her nursery school was operated from her home and her son had the responsibility of transporting the children to and from the school. The station wagon driven by him on the date of the accident was used for this purpose. Mrs. Lumpkin stated that she does not use the car for any other purpose, but that her son is allowed to use the car for his personal use. She places no restrictions on that use. She testified further that he usually finished his morning pickup of the children at approximately 8:30 a. m. On the morning of the accident, he had finished his work until that afternoon when he was required to take the children home from school. She said that Percy had free use of the car between the time he brings the children to the school in the morning and takes them home in the afternoon. She also said she had not sent him on any errands on that day. Percy testified that at the time of the accident he was returning to his home, where the nursery school was located, after visiting a friend. Mrs. Shirley Taylor testified that she contacted Mary Lumpkin after the accident and was told by her that the driver of the station wagon was her son, who was driving for the nursery school, and that she had insurance and would accept the responsibility. This testimony was not denied by Mary Lumpkin.
In a comparatively recent case the Louisiana Supreme Court, in Daniels v. Conn, 382 So.2d 945 (La.1980), stated that in a determination of the question of whether the employee is on a mission for the employer, the inquiry is whether the employee's tortious conduct was "so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest." A further test outlined by the Daniels court was whether the employee was performing some function for his employer and for which he was employed. In the Daniels case, the Supreme Court concluded, after considering all of the facts and circumstances surrounding that case, that because the employee was not "on duty" at the time of the accident, the employer was not responsible under the theory of respondeat superior.
In Daniels we affirmed the trial court's conclusion that the tortfeasor was not "on duty" on the week-end of the fatal accident. However, in our case, Percy had the responsibility, on the day of the accident, to return the children from the nursery school to their homes. At the time of the accident he was returning to the nursery school, where he lived. We conclude, as apparently the trial judge did, that Percy's employment duties were so closely connected *78 in time, place and causation to his employer's business that at the time of the accident he was on a mission for his employer. Under the circumstances we conclude his employer is liable. Having so concluded, the judgment of the trial court is affirmed.
AFFIRMED.