520 So.2d 1075 (1987)
Antoinette HEBERT, et ux., Plaintiffs-Appellants,
v.
Jon P. WITHERINGTON, et al., Defendants-Appellees.
No. 86-1097.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
Writ Denied February 5, 1988.
*1076 Shelton & Legendre, Philip D. Kobetz, Lafayette, for plaintiffs-appellants.
Jeansonne & Briney, Patrick J. Briney, Onebane, Donohoe, etc., Chris G. Robbins, Randy Keller, Juneau, Hill, etc., Kathleen F. Drew, Pugh & Boudreuax, James R. Shelton, Lafayette, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
GUIDRY, Judge.
Plaintiffs, Antoinette and Robert Hebert, appeal the trial court's judgment granting a motion for summary judgment in favor of defendant, The Hartford Insurance Company of the Southeast (hereafter Hartford), dismissing plaintiffs' claim against Hartford. We reverse.
This suit arises as a result of a motor vehicle accident which occurred January 11, 1985, at the intersection of U.S. Highway 90 and St. Julian Road in Lafayette Parish. Involved in the accident were Jon Witherington and plaintiff, Antoinette Hebert. At the time of the accident, Witherington was operating a 1984 Econoline Ford van, towing a homemade utility trailer and traveling westbound on St. Julian. As Witherington crossed U.S. Highway 90, he failed to see Mrs. Hebert who was traveling in a southerly direction on U.S. Highway 90, a four lane roadway, and a collision occurred. On the date of the accident, Hartford provided business automobile liability coverage in favor of Witherington's employer, Residential Mortgage Corporation (hereafter R.M.C.). Plaintiff alleged that Hartford was liable under the business automobile policy for the damages sustained by her because Witherington was acting within the course and scope of his employment with R.M.C. at the time of the accident.
After Witherington was deposed, Hartford filed a motion for summary judgment, seeking to be dismissed from the lawsuit on two alternate grounds. First, Hartford urged that the policy provided no coverage to Witherington because he was not in the course and scope of his employment with R.M.C. at the time of the accident. Second, Hartford urged that, even if Witherington was within the course and scope of his employment at the time of the accident, the policy did not provide coverage on the automobile Witherington was driving. The motion was argued and taken under advisement by the trial judge who, by a minute entry dated June 17, 1986, granted Hartford's motion specifically finding that, at the time of the accident, there was no coverage under the Hartford policy because Witherington was engaged in a personal mission unrelated to his employment with R.M.C. The court made no decision as to whether or not the vehicle being driven by Witherington at the time of the accident was a "covered vehicle" under the Hartford policy.
On appeal, Hartford admits that the vehicle being driven by Witherington was covered as R.M.C. had applied for a covering endorsement to its policy before the accident. Therefore only the "course and scope" issue remains viable.
*1077 The only question on this appeal is whether or not the trial judge correctly concluded, based upon the undisputed facts, that Witherington was engaged in a private mission, for his own benefit, unrelated to any employment relationship with R.M.C. and therefore was not acting within the course and scope of his employment as president of that corporation.
The following facts are not in dispute. At the time of the accident, Jon Witherington was the sole stockholder and owner of R.M.C. Although R.M.C. provided Witherington with a leased Mercedes Benz, which he normally drove to and from work and during the conduct of his business, Witherington used his personally owned vehicle at least 25% of the time for business purposes. On the date of the accident, between 8:00 and 8:30 a.m., Witherington, driving his personal vehicle and towing a trailer owned by his father-in-law, proceeded from his home to his office at R.M.C. where he engaged in his regular office duties. Sometime later that morning Witherington left his office in the van with trailer attached and drove to a warehouse he owned to pick up a mattress and box spring set which he intended to transport to his father-in-law's home in Farmerville, Louisiana, later that day. After loading the mattress and box spring onto the trailer and checking the warehouse, Witherington proceeded to return to his R.M.C. office to complete some work. The accident occurred on his return trip, at approximately 9:45 a.m.
Plaintiff-appellant takes no issue with the above recited facts but argues that the trial court erred as a matter of law when it concluded that, under such facts, defendant, Witherington, was not in the course and scope of his employment with R.M.C. at the time of the accident.
Usually, course and scope of employment questions arise in worker's compensation cases. However, regardless of the context in which such question arises, the legal principles applied in making such determinations are the same. If it is determined that Witherington was in the course and scope of his employment with R.M.C. when the accident occurred, then the Hartford policy issued to R.M.C. provides coverage. In Smith v. A.I.U. Insurance Company, 457 So.2d 868 (La.App. 3rd Cir.1984), a panel of this court, called upon to decide whether an automobile accident involving the plaintiff happened during the course and scope of his employment, stated:
"... The general rule is that injuries sustained while in transit to or from the work place do not arise out of the claimant's employment nor are they in the course thereof. Castille v. Sibille, 342 So.2d 279 (La.App. 3rd Cir.1977); Johnson v. Aetna Casualty & Surety Co., et al, 387 So.2d 1340 (La.App. 1st Cir.1980). Therefore, the plaintiff's recovery is precluded unless his car accident falls within one of the exceptions to this rule.

Castille outlines three exceptions to the general rule that injuries sustained in transit to or from the jobsite are noncompensable. First, if the employer provides transportation then an injury sustained in an automobile going to or coming from work is compensable. Second, benefits are due if an employee is injured in a vehicular accident if the employer provides expenses or wages for the time spent traveling in the vehicle. Third, benefits are due in those cases where the operation of the motor vehicle is incidental to or is actually the performance of some employment responsibility."
It is uncontested that at the time of the accident Witherington was on his way back to the R.M.C. office where, by his own testimony, he was to engage in the corporation's business. R.M.C. provided Witherington with transportation in the form of an automobile. However, on the day of the accident, Witherington was not in the "company" car but in his own vehicle. Yet, Witherington testified that this was his normal practice at least 25% of the time. Witherington stated that his normal duties involved a lot of driving to inspect real estate and other related matters. He drew no salary but was paid out of dividends from the company. It would appear, then, that he was compensated during normal *1078 business hours for the time he spent traveling in his or the company's vehicle.
As our Supreme Court explained in Miller v. Keating, 349 So.2d 265 (La.1977): "The mission and authority which a legal entity such as a corporation must be presumed to have given its chief executive officer and top human functionary is certainly much broader than that which an employer generally is likely to give or have given lower echelon employees".
This court, in Watson v. Ben, 459 So.2d 230 (La.App. 3rd Cir.1984), stated:
"The criteria for determining when an employee, who while driving a motor vehicle, is acting within the course and scope of his employment was set forth in the recent case of Johnson v. Dufrene, 433 So.2d 1109 (La.App. 4th Cir.1983), writ denied, 441 So.2d 765 (La.1983), wherein the court stated:
`Whether an employee is within the course and scope of his employment during any given incident presents a question that is not answerable except by general rules, given the myriad contexts in which it might arise. The specific inquiry is whether the employee's tortious conduct "was so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest". Daniels v. Conn., 382 So.2d 945 (La.1980); LeBrane v. Lewis, 292 So.2d 216 (La.1974). In those instances where the injury is caused by an employee's negligence while driving a vehicle owned by his employer, our jurisprudence has repeatedly stated that every case must be decided on its own facts. The important considerations which bear on the result are whether the vehicle was being used in such a manner as to benefit the employer, Taylor v. Lumpkin, 391 So.2d 74 (La.App. 4th Cir. 1980); whether the employee was subject to the employer's control at the time of the accident, Keen v. Pel State Oil Co., Inc., 332 So.2d 286 (La.App. 2d Cir.1976); whether the employee's use of the vehicle was authorized by the employer, Harding v. Christiana, 103 So.2d 301 (La.App.Orleans 1958); Futch v. W. Horace Williams Co., 26 So.2d 776 (La.App. 1st Cir.1946); reh. den., 27 So.2d 184; and whether the employee's motive arose from personal objectives or, instead, from his employer's concerns, Keen, supra, Johns v. Hunt Lumber Company, Inc., 250 So.2d 543 (La.App. 2d Cir.1971).'
. . . .
The single most important factor to consider in deciding whether there is vicarious liability is the right of the employer to control the work of the employee. Roberts v. State of Louisiana, Through the Louisiana Health and Human Resources Administration, 404 So. 2d 1221 (La.1981); Hickman v. Southern Pacific Transportation Company, 262 La. 102, 262 So.2d 385 (La.1972). In Roberts, the Supreme Court emphasized that "the right of control of the time and physical activities in the other party and the existence of a close relationship between the parties determines that one is a servant...."
The fact that the "employee", in this case, was the "chief executive officer and top human functionary" of the employer leaves no doubt that Witherington was, at all times, subject to his own control and that no closer relationship could have existed between employer and employee.
Finally, a well settled area of the law states that:
"... even though a servant may have turned aside from the master's business, yet the liability of the master reattaches as soon as the servant reassumes the business of his master.
And the authorities hold that, when the servant, having completed the purpose for which he turned aside, is returning to resume his duties, he is, whilst so returning, engaged in the business of his master."
Cusimano v. A.S. Spiess Sales Co., 153 La. 551, 96 So. 118 (1923). See also Gilbert v. Trotter, 160 So. 855 (La.App. 2d Cir. *1079 1935); Matheny v. United States Fidelity and Guaranty Co., 181 So. 647 (La.App. 2d Cir.1938), writ denied; Fackrell v. Gulley, 246 So.2d 368 (La.App. 1st Cir.1971).
Our consideration of the undisputed facts disclosed by this record, in light of the settled principles above set forth, convinces us that the trial court erroneously granted defendant's motion for summary judgment. We find the facts clearly show that Witherington was within the course and scope of his employment at the time of the accident.
Accordingly, we reverse the judgment of the trial court and remand this matter to the district court for further proceedings. All costs of this appeal are assessed against the Hartford Insurance Company of the Southeast.
REVERSED AND REMANDED.