550 So.2d 334 (1989)
Annette CASTILLE, et al., Plaintiff-Appellees,
v.
ALL AMERICAN INSURANCE COMPANY, et al., Defendants-Appellees, Defendant-Appellant.
No. 88-575.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
Rehearing Denied November 7, 1989.
Writ Denied January 19, 1990.
*335 Kermit A. Doucet, and David K. Balfour, Lafayette, for plaintiff-appellees.
Preis, Kraft, Ward Lafleur, Lafayette, for plaintiff-intervenor.
Hurlburt, Privat, George R. Privat, Lafayette, O'Neil, Eichen & Miller, Earl S. Eichen, James R. Swanson, New Orleans, J.B. Willis, St. Martinville, Gachassin, Hunter & Sigur, Robert A. Mahtook, Juneau, Judice, Kathleen Drew, Lafayette, for defendants-appellees.
Onebane, Donohoe, Paul D. Gibson & Randy Keller, Lafayette, for defendant-appellant.
Before GUIDRY, LABORDE and KNOLL, JJ.
KNOLL, Judge.
The appeal before us concerns whether an employee is acting within the course and scope of his employment when he is involved in an automobile accident, thus rendering his employer liable for his negligence.
This issue was presented to the trial court on opposing motions for summary judgment. Appellant, LFT Jet, Inc. (LFT Jet), filed a motion for summary judgment contending that its employee, Sean Leblanc, was not acting within the course and scope of his employment at the time of the accident. St. Paul Fire and Marine Insurance Company (St. Paul), the uninsured/underinsured carrier for plaintiff's employer, filed a motion for partial summary judgment contending Leblanc was in the course and scope of his employment. The trial court found that Leblanc's errand after work to have his paycheck corrected on instructions from his supervisor was employment rooted. We affirm.

*336 FACTS
On February 28, 1985, Leblanc, received his paycheck from LFT Jet at the worksite (Lafayette airport) and noticed an error in the amount of the check. Upon speaking with his immediate supervisor, Nabil, Leblanc was directed to another supervisor. Leblanc did not recall the name of the second supervisor, or whether his employer was "Cypress Aviation or LFT Jet `cause they changed it so many times, I really don't remember." Leblanc described the second supervisor as one of the owners. This supervisor told Leblanc "to go to the main office and they'd straighten it out." Since Leblanc had completed his work shift (the morning shift), he "punched out" and proceeded to the main office in his grandfather's truck. At the intersection of Taft and Jefferson streets in Lafayette, he rear-ended the plaintiff, Annette Castille, at approximately 1:15 p.m. After the accident investigation, Leblanc continued to the main office where they "cut me another check" for the correct amount and went home. From the time Leblanc left the airport until the accident happened, he did not stop anywhere.
LFT Jet appeals contending the trial court erred in finding Leblanc's mission was employment rooted and that there were disputed issues of fact.

ACTING WITHIN COURSE AND SCOPE
LFT Jet contends that Leblanc was not on a special errand for LFT Jet, therefore, he was not acting within the course and scope of his employment. In support of this contention LFT Jet argues that: (1) "the unknown supervisor" did not tell Leblanc when to go or how to go; (2) Leblanc was not instructed to speak to anyone; (3) Leblanc was not asked to carry anything; (4) Leblanc was going to the office of Century Minerals and Cypress Aviation, which had no connection with LFT Jet; (5) Leblanc had "punched out" before leaving; (6) Leblanc was not compensated for his time spent on the journey; and, (7) he used his grandfather's personal vehicle. While we agree with LFT Jet that these augumentive elements are present in this case, we conclude that it is not sufficient to defeat LFT Jet's vicarious liability for Leblanc's negligence under the circumstances presented. Every case must be judged under its own set of facts to determine if an employee is acting within the course and scope of employment. In Hebert v. Witherington, 520 So.2d 1075 (La.App. 3rd Cir. 1987), writ denied, 522 So.2d 566 (La.1988), a case addressing the identical issue before us, this court in its opinion set forth the well recognized jurisprudential rules that are relied upon in resolving this issue, which we reiterate herein.
"Usually, course and scope of employment questions arise in worker's compensation cases. However, regardless of the context in which such question arises, the legal principles applied in making such determinations are the same. If it is determined that Witherington was in the course and scope of his employment with R.M.C. when the accident occurred, then the Hartford policy issued to R.M.C. provides coverage. In Smith v. A.I.U. Insurance Company, 457 So.2d 868 (La.App. 3rd Cir.1984), a panel of this court, called upon to decide whether an automobile accident involving the plaintiff happened during the course and scope of his employment, stated:
`... The general rule is that injuries sustained while in transit to or from the work place do not arise out of the claimant's employment nor are they in the course thereof. Castille v. Sibille, 342 So.2d 279 (La.App. 3rd Cir.1977); Johnson v. Aetna Casualty & Surety Co., et al., 387 So.2d 1340 (La.App. 1st Cir. 1980). Therefore, the plaintiff's recovery is precluded unless his car accident falls within one of the exceptions to this rule.

Castille outlines three exceptions to the general rule that injuries sustained in transit to or from the jobsite are noncompensable. First, if the employer provides transportation then an injury sustained in an automobile going to or coming from work is compensable. Second, benefits are due if an employee is injured in a vehicular accident if the employer provides expenses or wages for the time *337 spent traveling in the vehicle. Third, benefits are due in those cases where the operation of the motor vehicle is incidental to or is actually the performance of some employment responsibility.'
This court, in Watson v. Ben, 459 So.2d 230 (La.App. 3rd Cir.1984), stated:
`"The criteria for determining when an employee, who while driving a motor vehicle, is acting within the course and scope of his employment was set forth in the recent case of Johnson v. Dufrene, 433 So.2d 1109 (La.App. 4th Cir.1983), writ denied, 441 So.2d 765 (La.1983), wherein the court stated:
Whether an employee is within the course and scope of his employment during any given incident presents a question that is not answerable except by general rules, given the myriad contexts in which it might arise. The specific inquiry is whether the employee's tortious conduct `was so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest.' Daniels v. Conn., 382 So.2d 945 (La.1980); LeBrane v. Lewis, 292 So.2d 216 (La.1974). In those instances where the injury is caused by an employee's negligence while driving a vehicle owned by his employer, our jurisprudence has repeatedly stated that every case must be decided on its own facts. The important considerations which bear on the result are whether the vehicle was being used in such a manner as to benefit the employer, Taylor v. Lumpkin, 391 So.2d 74 (La.App. 4th Cir. 1980); whether the employee was subject to the employer's control at the time of the accident. Keen v. Pel State Oil Co., Inc., 332 So.2d 286 (La.App. 2d Cir.1976); whether the employee's use of the vehicle was authorized by the employer. Harding v. Christiana, 103 So.2d 301 (La.App.Orleans 1958); Futch v. W. Horace Williams Co., 26 So.2d 776 (La.App. 1st Cir.1946); reh. den., 27 So.2d 184 [La.App.1946]; and whether the employee's motive arose from personal objectives or, instead, from his employer's concerns. Keen, supra. Johns v. Hunt Lumber Company, Inc., 250 So.2d 543 (La.App. 2d Cir.1971)."'

* * * * * *
Finally, a well settled area of the law states that:
`"... even though a servant may have turned aside from the master's business, yet the liability of the master reattaches as soon as the servant reassumes the business of his master.
And the authorities hold that, when the servant, having completed the purpose for which he turned aside, is returning to resume his duties, he is, whilst so returning, engaged in the business of his master."'

Cusimano v. A.S. Spiess Sales Co., 153 La. 551, 96 So. 118 (1923). See also Gilbert v. Trotter, 160 So. 855 (La.App. 2d Cir.1935); Matheny v. United States Fidelity and Guaranty Co., 181 So. 647 (La.App. 2d Cir.1938), writ denied; Fackrell v. Gulley, 246 So.2d 368 (La.App. 1st Cir.1971)."
In the case sub judice, in its written reasons the trial court concluded:
"It is undisputed that, on the day of the accident, there was an error in Mr. Leblanc's paycheck. It is apparent that either he or another employee of LFT Jet would have had to take measures to correct the problem. Furthermore, his supervisor told him that he needed to go to the main office to correct the problem.
The Court finds that the mission was thus `employment rooted', and that Sean Leblanc was within the course and scope of his employment at the time the accident occurred."
The record clearly supports the trial judge's conclusion. We find Leblanc's motive for the trip was purely employment related. Had it not been for the incorrect paycheck, Leblanc would not have made the errand. Furthermore, he was instructed to go to the main office to straighten it out.
*338 We find the facts and rationale of Torres v. U.S. Fidelity and Guar. Co., 499 So.2d 1293 (La.App. 4th Cir.1986), similar to the present case. In Torres, the court concluded that an employee was acting within the course and scope of his employment when an accident occurred en route to his employer's home immediately after work to discuss a pay raise. The court reasoned:
"First, Duplessis claims he informed Giamalvo earlier that he was coming to see him later to discuss "something". Second, Duplessis was not travelling home when the accident occurred but was going directly to Giamalvo's home after punching out at 1:30 p.m. Third, Duplessis was going to see Giamalvo specifically to discuss a pay raise, definitely a work related matter. These factors taken together indicate quite clearly that Duplessis' trip was strictly for business purposes. There is no evidence to indicate that Duplessis was on a social or purely personal trip. Accordingly, under the instant facts, we hold that the trial court's determination in this regard is correct."
Hebert v. Witherington, supra, from this circuit, is another case finding vicarious liability of the employer based on the employee's motive. In that case we found that an accident occurred in the course and scope of employment when an employee, who was the chief executive officer of the company and driving his own automobile, but which he drove for company business at least 25% of the time, was involved in an accident when returning to work after having picked up a mattress and box spring which he intended to deliver to his father-in-law later in the day.
Accordingly, we conclude that Leblanc's errand to correct a company paycheck was in furtherance of company business, therefore, Leblanc was acting within the course and scope of his employment when the accident occurred.
LFT Jet further argues that from the affidavit of Steve Englebrecht it shows that Leblanc's check was from Cypress Aviation, Inc. and not LFT Jet. The affidavit shows that: Steve Englebrecht was president of Cypress Aviation, Inc. in late 1984; as president of Cypress Aviation he was aware that Century Mineral Corporation on South College Road handled the payroll checks; he resigned and became president of LFT Jet as of February 1, 1985, wherein the assets of Cypress Aviation, Inc. were sold to LFT Jet; he was aware that payroll checks were processed by Computers for Business Management after having been calculated and approved by LFT Jet at their office at the Lafayette airport and at no time were any LFT Jet payroll checks handled by Century Minerals; on the day of the accident, Leblanc was going to Century Minerals' office to have a correction made to a Cypress Aviation payroll check. The record does not firmly establish that Leblanc was correcting a Cypress Aviation paycheck. The record preponderates that Cypress Aviation became LFT Jet with basically the same owners. Leblanc always received his paycheck at the airport. In his deposition Leblanc stated he noticed the check was incorrect the day he received it, which was the day of the accident. An LFT Jet supervisor instructed Leblanc to go to the main office to straighten out his paycheck. We do not find that the disputed fact of whether the check was LFT Jet's or Cypress Aviation's material to our determination that Leblanc was acting within the course and scope of his employment with LFT Jet. Moreover, the record shows that St. Paul filed a third-party demand against Cypress Aviation on August 7, 1986, and on October 13, 1986, St. Paul filed a third-party demand against LFT Jet. Subsequently, on July 16, 1987, St. Paul filed a motion to dismiss Cypress Aviation on the grounds that: "Undersigned has now been assured that Cypress Aviation at no time employed Sean Leblanc or had any business transactions with his employer." Cypress Aviation was dismissed without prejudice on July 20, 1987. This convinces us that Leblanc was in fact an employee of LFT Jet and further, the paycheck in question came from LFT Jet.

MOTION TO REMAND
Alternatively, LFT Jet filed in this court a motion to remand the case for the introduction *339 of additional evidence. In support of its contention, LFT Jet offers affidavits from Leblanc's supervisor and the company's accountant to show that (1) Leblanc was never told to go to the main office and (2) all payroll checks were issued at the work site.
It is undisputed that Leblanc did receive an incorrect payroll check at the airport and that he did receive a payroll check in the correct amount at the main office. Regardless of LFT Jet's assertions that Leblanc's supervisor did not instruct him to go to the main office, the undeniable fact remains that Leblanc did go to the main office for the purpose of getting another check and ultimately received it. Assuming arguendo that LFT Jet's assertions are true, the nature of his trip remains unchanged. Namely, Leblanc's motive for the trip was employment related and as a result, LFT Jet would still be liable under the aforementioned jurisprudence. Since the additional evidence would not affect the outcome of the case, a remand is not in order. Motion for remand is hereby denied.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to LFT Jet.
AFFIRMED.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, Judge, Dissenting.
I cannot agree that St. Paul Fire and Marine Insurance Company (St. Paul) is entitled to summary judgment decreeing that, at the time of the accident, Sean LeBlanc, was acting in the course and scope of his employment with LFT Jet. This finding is based upon the trial judge's conclusion that LeBlanc, after clocking out for the day, and pursuant to information derived from one of his supervisors, was on his way to the offices of Century Minerals, Inc., located on South College Street, in order to correct a discrepancy in a payroll check at the time of accident. Thus, the trial judge determined that at the time of accident, LeBlanc was in the course and scope of his employment with LFT Jet as the trip was employment oriented.
The following facts are not disputed:
1. The accident occurred on February 28, 1985.
2. Sean LeBlanc was previously an employee of Cypress Aviation, Inc., however, on the date of accident he was an employee of LFT Jet.
3. As of February 1, 1985, the assets of Cypress Aviation, Inc. were sold to LFT Jet, Inc., and the latter began doing business on that day.
4. On the date of accident, Sean LeBlanc, after clocking out and allegedly pursuant to information derived from one of his supervisors, was traveling to the offices of Century Minerals, Inc., parent corporation of Cypress Aviation, Inc., located on South College Street in Lafayette, to have a new check issued to correct a discrepancy in his payroll check.
5. At no time were any LFT Jet payroll checks handled by Century Minerals Corporation.
6. The accident occurred while LeBlanc was enroute to the offices of Century Minerals. Following the accident, he arrived at the offices of Century Minerals and he was issued a corrected check.
The following facts are shown by the record to be in dispute and/or not established by the record:
1. The issuer or drawer of the check is a matter in dispute, i.e., the record does not establish whether the check to be corrected was a Cypress Aviation, Inc. check or an LFT Jet check. According to the affidavit of Steve Engelbrecht, president of LFT Jet at the time of accident, Sean LeBlanc was going to Century Minerals office to correct an error in a Cypress Aviation, Inc. payroll check. LeBlanc, in his deposition, could not state specifically whether the check was issued by Cypress Aviation or LFT Jet.
2. The payroll period for which the check was issued is not reflected in the record.
3. The nature of the transaction whereby LFT Jet acquired the assets of Cypress *340 Aviation is not established by the record, i.e., whether LFT Jet assumed all liabilities of Cypress Aviation at the time of acquisition, etc. Presumably, absent any showing to the contrary, the corporations were separate entities, neither being responsible for the error, omissions etc. of the other.
The majority finds the disputed issues and those not established by the record immaterial to a finding that, at the time of accident, LeBlanc was acting in the course and scope of his employment with LFT Jet. I disagree. In my view, we must assume, absent any evidence to the contrary, that Cypress Aviation and LFT Jet are distinct and separate entities. If, as attested to by Engelbrecht, Cypress Minerals did not handle LFT Jet payroll checks and LeBlanc, after completing his work for LFT Jet and clocking out, was enroute to the Cypress Minerals office to correct a Cypress Aviation check, I cannot see how at the time of accident, he could be considered to be in the course and scope of his employment with LFT Jet. In my view, this mission could not be considered rooted to his employment with LFT Jet but rather, rooted to his former employment with Cypress Aviation. In sum, I believe the above recited disputed facts are material to a determination concerning whether at the time of accident, LeBlanc was in the course and scope of his employment with LFT Jet. Considering the well established rules concerning summary judgment matters, particularly that any doubt as to genuine issues of material fact are resolved against the grant of summary judgment and in favor of trial on the merits, I would reverse the trial court's judgment and remand for further proceedings. For these reasons, I respectfully dissent.